**TEXAS DEPARTMENT OF PUBLIC SAFETY, James R. Wilson, Joe E. Milner, Dudley Thomas, William F. Maley and Wayne Pullen, Appellants,**

v.

**John A. MARTIN, Appellee.**

**Nos. 09–93–166 CV, 09–93–267 CV.**

Court of Appeals of Texas, Beaumont.

Aug. 4, 1994.

Rehearing Overruled Sept. 8 and Oct. 6, 1994.

---

W. Reed Lockhoof, Ann Kraatz and Fred Weldon, Assistant Attys. Gen., Austin, for appellant.

Lucius D. Bunton and Jack Crier, Austin, Cris E. Quinn, Reaud, Morgan & Quinn, Inc., Beaumont, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

These appeals come to us from the 60th Judicial District Court, in and for the County of Jefferson, State of Texas, Honorable Gary Sanderson presiding.

The respective appeals are interlocutory[1].

John A. Martin, a Texas Highway Patrol Trooper, employed with the Texas Department of Public Safety, is the sole appellee.

Appellants, and the respective complaints lodged against each, are as follows:

The Texas Department of Public Safety has been sued under and pursuant to the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.CODE ANN. § 101.001, *et. seq.* (Vernon 1986 & Supp.1994);

James R. Wilson, sued in his official capacity only, as Director of the Texas Department of Public Safety;

Joe E. Milner, former Director of the Texas Department of Public Safety, sued in his individually capacity only;

Dudley Thomas, Assistant Director of the Texas Department of Public Safety, sued individually for money damages and declaratory relief, and as Agent for the Texas Department of Public Safety for injunctive relief;

William F. Maley, Major with Texas Department of Public Safety and Commander of Region 2 for the Texas Department of Public Safety, sued individually for money damages and declaratory relief, and as Agent for the Texas Department of Public Safety for injunctive relief;

Wayne Pullen, retired Captain of the Highway Patrol Section of the Texas Department of Public Safety, sued individually for money damages and declaratory relief, and as Agent for the Texas Department of Public Safety for injunctive relief.

We have before us two separate appeals generated from a common trial court action bearing Cause No. B–140084. Appellate Cause No. 09–93–166–CV is an interlocutory appeal by the Texas Department of Public Safety, James R. Wilson and Dudley Thomas, contesting the Temporary Injunction Order signed by the trial court on June 8, 1993. This Temporary Injunction effectively enjoined those named parties from holding an administrative hearing regarding appellee, John A. Martin, until judgment in that cause is entered by the trial court.

Appellate Cause No. 09–93–267–CV is an appeal by Joe E. Milner, Dudley Thomas,

---

1. The respective appeals are interlocutory in that No. 09–93–166–CV contends that the trial court erred in entering its temporary injunction against the named appellants. Appeal No. 09–93–267–CV is a contention by appellants that the trial court erred in denying respective motions for summary judgment.

William F. Maley and Wayne Pullen, contending that the trial court erred in denying their Motion for Summary Judgment.

We shall address both appellate Cause Nos. 09–93–166–CV and 09–93–267–CV by single opinion.

This rather complex matter requires indepth factual background, thus we set forth in detail appellee's position and appellants' response.

## THE FACTS

Appellee, John A. Martin is a male caucasian who, at the time of the proceedings below, was twenty-eight-years of age and had been employed as a commissioned law enforcement officer with the Texas Department of Public Safety for a period of five years. Appellee attained the rank of Trooper II with the Highway Patrol in November, 1990.

On January 31, 1991, appellee was advised by his Supervisor, Sergeant Charles Smith, that a formal complaint (or "C–1") had been filed against him by Sergeant Smith alleging three violations of the policies of the Texas Department of Public Safety General Manual. These three charges involved the discharge of a firearm, the failure to report the discharge of the firearm to a supervisor, and the use of force.

These complaints focused around appellee's attempted apprehension of a young man driving a stolen motor vehicle. Appellee stopped the stolen vehicle on Interstate Highway 10 on the evening of January 25, 1991. The driver of the vehicle, abandoned same, thereby fleeing on foot. Appellee fired a warning shot with a shotgun into the air as the driver ran across a rice field away from the highway. Appellee did not pursue the driver on foot; however, the driver was later apprehended, taken into custody, and taken to the East Chambers County Courthouse Annex for arraignment by a Justice of the Peace. Appellee remained with the apprehended driver until his arraignment. While waiting arraignment, the driver became belligerent to appellee and other attending law enforcement officials. Appellee at one point held the driver against a wall in the presence of the other officials and warned him that he needed to be quiet and respectful. When appellee attempted to place the suspect into a chair after the admonishment, the chair fell. The suspect was placed in another chair. The suspect was not injured or abused and no complaint has been made against appellee Martin, either by the suspect or by anyone else on his behalf. Furthermore, the suspect has made no complaint to the DPS or any other body.

The complaint, or C–1, filed by appellee's sergeant was investigated by the Department. The allegations in the complaint alleging the unnecessary use of force and the failure to report the discharge of a firearm were sustained. The allegation alleging a violation of policy in the discharge of a warning shot was not sustained.

By letter dated May 13, 1991, from Dudley M. Thomas, Chief of Traffic Law Enforcement for the DPS, appellee was advised as to the disposition of the allegations against him. Appellee was told that he was to receive as punishment thirty (30) days off duty without pay and six (6) months disciplinary probation. Appellee was further advised that he must submit to a psychological examination by a professional selected by the Department and at the Department's expense. Chief Thomas, after consultation with John West, Chief of Legal Services for the Department of Public Safety, instructed appellee to submit to this psychological evaluation. Appellee Martin exercised his right to appeal the proposed disciplinary decisions to a Grievance Board Panel consisting of three officers in the Department. According to the General Manual, after an adversary hearing, the panel's recommendation is forwarded to the Director of the DPS. The Director then makes a decision as to the discipline and that decision is final.

During the investigation of the complaint against him, appellee learned that defendant Maley was of the opinion that the warning shot fired by appellee at the time of the attempted apprehension of the driver was "deadly force." Appellee discussed the issue with Maley and disagreed with Maley's "deadly force" assessment. At any rate, the charge about the propriety of the warning shot was not sustained by the Department,

but defendant Maley remained adamant in his position.

On or about May 17, 1991, appellee met with defendant Maley and defendant Pullen concerning the proposed discipline of the Department. Appellee tape-recorded his meeting with defendants Maley and Pullen with said defendants being unaware of the tape-recording. A transcript of this tape-recording is before this Court. Said transcript reflects Maley doing most of the talking during the meeting, which included the presence of Captain Pullen and Lieutenant James L. Fife. According to the transcript, Maley begins by explaining to appellee the punishment assessed appellee which included a thirty *working* days suspension without pay. Maley also told appellee that Colonel Milner ordered that appellee undergo a psychological examination to be administered by the DPS. Maley then goes into what appears to be the rationale for the punishment meted out to appellee. It appears that Maley is *comparing the allegations against appellee* with two other similar cases involving other troopers. Maley tells appellee that of five individuals involved in assessing punishment, two wanted to discharge appellee, one wanted to assess a ninety day suspension, and another that stated, "ya'll do what you want to[,] I ain't going to fire him." Maley then exclaims, "One, uh, one vote I know to the Colonel (Milner) was if you don't discharge[ ] him, you're going against the advice of the advisor and if anything ever occurs where you as a department going (sic) to Court involving him, you have lost and it will cost you millions of dollars." Maley then advises appellee, "should you choose to appeal there is only one thing appealable and that's the time off. The other items are not up for grabs." As Maley next explains the fact that appellee's suspension involves "working days" and not "calendar days," he makes the following comments:

By the way, this has gone to one prosecutor who ways (sic) I don't want it and it is still in the hands of another who says I

don't know yet. And that scares me. But, in all honesty, from the time this first started I thought we had lost you. If it hadn't been for your Captain and lieutenant and sergeants here we probably would have. . . . But, uh, I, from the time this came to my attention—and I don't know if I told you this while ago or the last time we talked. My focus has not been trying to save your job. My focus has been trying to keep you out of jail. That's what I've spent the majority of my time on because if this goes to William Wayne Justice you're gone as you can be. You are gone. And that's been my focus. I've been trying my best to keep you out of jail. So far one prosecutor has said: "No, I don't". (sic) He passes. It's still in the hands of another one.

Maley then reiterates that Colonel Milner, "ain't weighing one; he's weighing three. Because they're all so similar." [2] Toward the end of the meeting, Maley makes the following statement:

I've got no apologies to make to you for anything I've done or said, but when this first occurred my boss pointed his finger at me and said: "You better get him in civilian clothes and get that God-damn pistol away from him right now." I removed you from the riot team, for which you got offended, I took you out of the lead for which you got offended. I damn sure violated a direct order when I did and I got my ass ripped for it. But I stayed ripped. I've had my ass ripped before. But my instructions were at the end of that was that you better get that pistol off of him and get him in civilian clothes.

At this point, the meeting with Maley, Pullen and Fife ended, and a later conversation between appellee and Pullen was recorded by appellee. The transcript of this conversation reflects that Pullen advised appellee that should he appeal the Department's decision to punish him, defendant Maley believed that appellee would be fired. Accord-

---

**2.** We note that Maley seems to be indicating that Colonel Milner is making some sort of decision as to appellee's punishment. If this were true, it would be a violation of appellee's right to appeal through the grievance process. It is only after

the grievance panel has made its decision that Colonel Milner, as Director of the Department of Public Safety, could make a final decision as to appellee's fate.

ing to Pullen, it was Maley's belief that John West wanted to see appellee's employment terminated. Pullen further informed appellee that John West would see that appellee would be fired if he (appellee) appealed or that West would later have him fired for some other reason. When asked by appellee if the grievance board was supposed to determine his punishment, Pullen replied:

No they make a recommendation. But the Colonel—that's the reason our grievance procedures are not worth a dime. Because the Colonel has already signed off and that was his decision. And the grievance board makes a recommendation to the Colonel. Well, shit, the Colonel's has (sic) done seen the thing. Now I have problems with the grievance board, quite honestly. With the grievance procedure, not with the grievance board.

Pullen then goes on to relate a situation in Dallas involving an African–American trooper that Pullen apparently found analogous to appellee's. Pullen continues to relate the story to appellee as follows:

And they thought they had a dischargeable case up there and was pretty well along with it and up pops this thing and they's (sic) faced with we gonna fire a black trooper and here is a case that parallels that and here is a Captain's boy and we're not going to fire him.

&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;

And in my opinion—I don't know, I don't know how much his time was but I suspect that's the reason yours got kicked from five to thirty because they're trying to parallel the things out saying we are going to treat them equal.

While Pullen related his belief that the criminal suspect upon whom the Dallas trooper was alleged to have used excessive force did file some sort of civil lawsuit, there is no evidence in the record before us that the criminal suspect appellee arrested has made any claim or complaint against appellee or DPS. In fact, appellee indicated to Pullen that the criminal suspect did not make a statement, nor was he interviewed or questioned by anyone about the incident.

Other alleged irregularities or improprieties in the disciplinary process accorded to appellee by appellants include the following: 1) that the person who was chosen by DPS to do the psychological evaluation of appellee, Greg Riede, met rather extensively with William Maley prior to Riede conducting the evaluation of appellee. Additionally, Maley provided Riede with appellee's entire personnel file prior to Riede's examination of appellee; 2) that DPS personnel put pressure on appellee's chosen arbiter on the grievance board, Sergeant Greg Arthur, to remove himself from the board; 3) that appellee's father, Captain Robert Martin, testified that Major Maley initiated contact with him (Captain Martin) on four different occasions to discuss appellee's disciplinary status even though Captain Martin is stationed in Houston and is not responsible for supervising troopers in Jefferson County; 4) that Major Maley communicated the results of appellee's psychological evaluation by Greg Riede, said evaluation being somewhat negative at to appellee's mental status, to individuals *outside* of DPS; and 5) that Captain Martin, who in his experience as a supervisor in the DPS and familiarity with the disciplinary process of troopers, testified that appellee's case was handled "significantly different" from similar situations with which he (Captain Martin) was personally familiar.

We now set forth the respective points of error asserted in this appeal by respective appellants. In appellate Cause No. 09–93–166–CV, appellants, the Texas Department of Public Safety (DPS), James R. Wilson in his capacity as Director of the DPS, and Dudley Thomas in his capacity as the Assistant Director of the DPS, assert the following error:

The District Court erred by ignoring the proper standard for granting a temporary injunction against a state agency and state officials acting in their official capacity.

A. A state agency or its state officials acting in their official capacity are not proper parties for injunctive relief.

B. Plaintiff–Appellee failed to prove that Director Wilson would be acting outside the scope of his lawful authority by having the grievance board panel proceed with the administrative hearing.

C. The Court was without jurisdiction to grant the injunctive relief requested by Plaintiff–Appellee.

■ We begin with an analysis of Subpart C of appellants' point of error as that subpart contends that the trial court was without jurisdiction to entertain appellee's suit for injunctive relief. As we appreciate the argument in their brief, appellants characterize appellee's attempt at injunctive relief as a "challenge [to] administrative agency actions by an original action in state district court." As we read the pleadings and the record before us, it is clear that appellee's need for injunctive relief was not based on the actions by an administrative agency but to prevent said actions from taking place prior to a judicial determination on whether or not individuals in charge of administering the disciplinary process of the DPS were engaging in unauthorized practices in violation of state statutory or constitutional law. Appellants rely on *Sells v. Roose*, 769 S.W.2d 641 (Tex. App.—Austin 1989, no writ), for the proposition that a district court has no power to review an administrative decision unless said decision violates a constitutional right or adversely affects a vested property right, or unless a statute exists vesting in the district court special jurisdiction to review the administrative decision.

■ In the instant case, appellants' third amended original petition alleges a variety of causes of action including deprivation of due process and liberty under TEX. CONST. art. I, § 19; denial of equal protection under TEX. CONST. art. I, §§ 3 & 3a; and denial of freedom of speech under TEX. CONST. art. I, §§ 8, 13 & 27. Judicial intervention in intra-agency disciplinary proceedings may be permissible when individuals in supervisory or decision-making positions within the agency engage in actions or exercise authority beyond their statutorily conferred powers. *See Westheimer Independent Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex.1978). Where irreparable harm will be suffered and an administrative agency is unable to provide relief, the courts may properly exercise their jurisdiction in order to provide an adequate remedy. *Houston Fed. of Tchrs. v. Houston Ind. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex.

1987). Under the facts and circumstances of the instant case, we find that jurisdiction existed to entertain appellee's request for injunctive relief. Subpart C of appellants' point of error is overruled.

■ Under Subpart A of appellants' point of error, it is argued that an aggrieved party seeking injunctive relief from activity involving a state agency may sue an individual or individuals in authority at the agency, but the agency itself is not a proper party for injunctive relief. We agree based upon the holding and authorities cited in *Bagg v. Univ. of Texas Medical Branch*, 726 S.W.2d 582, 584–585 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). As the court in *Bagg* stated:

> Appellant's suit depends upon the premise that the alleged actions of [the defendants] were unlawful. Unlawful or unauthorized actions are not considered acts of the state. The supreme court has stated that we must not consider his suit an attempt to control state action. By the same token, Bagg's suit cannot be brought against the state agency; it must be brought against the individuals who were acting unlawfully. If the alleged wrongful actions are not state actions, the state cannot be the proper party to sue.

*Bagg*, 726 S.W.2d at 585. We sustain Subpart A of appellants' point of error. The portion of the temporary injunction of June 8, 1993, with regard to the Department of Public Safety only, is dissolved. The individual appellants, James Wilson and Dudley Thomas are unaffected by our decision under Subpart A of appellants' point of error.

■ Subpart B of appellants' point of error is an attack on the merits of the trial court's issuance of the temporary injunction. Apparently lost on both parties is the standard by which we as reviewing courts must view an attack on injunctive relief at the appellate level for all briefs fail to address said standard. In granting or refusing a temporary injunction, the trial court is vested with broad discretion in determining the only issue: whether the party requesting the temporary relief is entitled to preservation of the status quo of the subject matter pending trial

on the merits. *Brooks v. Expo Chemical Co., Inc.,* 576 S.W.2d 369, 370 (Tex.1979); *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). On appeal, the standard of review is whether the record clearly shows the trial court abused its discretion in making its determination. *Brooks,* 576 S.W.2d at 370; *Davis,* 571 S.W.2d at 862. On appeal, the merits of the underlying case are not presented for appellate review. *Davis,* 571 S.W.2d at 861. The reviewing court may not substitute its judgment for that of the trial court, but will limit its review to whether the court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Davis,* 571 S.W.2d at 862; *Univ. of Tex. Med. School v. Than,* 834 S.W.2d 425, 429 (Tex.App.—Houston [1st Dist.] 1992, no writ). In the instant case, the trial court included the following findings within the temporary injunction:

1. John A. Martin will probably prevail on the trial of this cause;

2. The Texas Department of Public Safety (the "DPS"), James R. Wilson in his capacity as Director of the DPS, Dudley Thomas as Assistant Director of the DPS, and Major William F. Maley of the DPS, intend to hold an administrative grievance board hearing regarding John A. Martin as soon as possible and before the Court can render judgment in this cause;

3. If the DPS, James R. Wilson, Dudley Thomas, and William F. Maley carry out that intention, they will thereby alter the status quo and tend to make ineffectual a judgment in favor of John A. Martin in that John A. Martin would be required to attend an administrative hearing in which he cannot receive due process and will be irreparably damaged by an unlawful invasion of his liberty interests; and

4. Unless these Defendants are deterred from carrying out that intention, John A. Martin will be without any adequate remedy at law in that he will be required to suffer an administrative hearing which result will have been previously determined and he would be required to receive days off without pay and thereby

be damaged prior to this Court's opportunity to render judgment in this cause.

In light of the testimony and physical evidence before the trial court, we cannot say that the trial court's issuance of the temporary injunction was so arbitrary that it exceeded the bounds of reasonable discretion. We are reluctant to make any comments regarding the evidence before the trial court as the underlying lawsuit is pending. The testimony and physical evidence before the trial court did raise the distinct possibility that an example was to be made of appellee's infractions of Department policy and that the defendants, all in a superior or supervisory capacity to appellee, were apparently either actively engaged in a premeditated disposition of appellee's case or acquiesced in it. The evidence also raised the issue of disparate treatment with regard to appellee's disciplinary process and the disciplinary process of a similarly situated trooper in another part of the state. We therefore find no abuse of discretion by the trial court in issuing the temporary injunction. Subpart B of appellants' point of error is overruled.

## APPELLANTS' MOTIONS FOR SUMMARY JUDGMENT

Appellants, Texas Department of Public Safety, Joe Milner, Dudley Thomas, Wayne Pullen, and William F. Maley, in appellate Cause No. 09–93–267–CV contend that the trial court erred in denying their respective motions for summary judgment in that they were immune from liability under the doctrine of qualified immunity. Appellant Department of Public Safety contends that summary judgment should have been granted in its favor because as a matter of law appellant was immune from liability under the doctrine of sovereign immunity. At the outset we note that courts of appeals generally have no jurisdiction to hear appeals from interlocutory orders unless specifically authorized by statute. *Eichelberger v. Hayton,* 814 S.W.2d 179 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Tex.Civ.Prac. & Rem.Code Ann. § 51.014(5) (Vernon Supp. 1994), provides appellants with such authorization. Therefore, the sole issue before us is whether or not summary judgment was prop-

er with regard to appellants' qualified immunity defense.

■■■■ The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–549 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–311 (Tex.1984).

■■■■ The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit but rather to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of fact remains. *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 563 (1962). When the defendant is the movant, summary judgment is proper only if the plaintiff cannot, as a matter of law, succeed upon any theory pleaded. *Waugh v. City of Dallas*, 814 S.W.2d 492, 494 (Tex.App.—Dallas 1991, writ denied). Since the instant appeal is strictly limited to the issue of the existence of qualified immunity, we must decide, taking all of appellee's evidence as true and resolving all inferences in his favor, whether a fact issue exists with regard to appellants' claims of qualified immunity.

■■■■ The rule states that government employees are entitled to official immunity from lawsuits arising from the performance of their 1) discretionary duties in 2) good faith as long as they are 3) acting within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex.1994). In the instant case, if we take all of the evidence and inferences of appellee's case as presented to the trial court as true, the actions of appellants raise fact issues of good faith and scope of authority as to their handling of appellee's disciplinary proceedings. If appellee's evidence and inferences are true, the record reflects false statements being made to appellee, with knowledge of their falsity; confidential material involving appellee being disseminated to DPS personnel having no authority over appellee's disciplinary proceedings as well as to non-DPS personnel; violations of DPS General Manual, 46.01, *et. seq.*, and 90.01, *et. seq.*; and psychological intimidation used on appellee so as to have him withdraw his appeal or resign from the DPS. As we stated in *City of Beaumont v. Bouillion*, 873 S.W.2d 425, 441 (Tex.App.—Beaumont 1993, writ granted), "[T]he [Texas] constitution does provide for an independent grounding to assert a constitutional cause of action where a governmental entity interferes with an individual's constitutionally protected right, especially those rights enumerated in the Bill of Rights." As stated previously, appellee's third amended petition alleges the commission of several "constitutional torts" by appellants. If genuine issues of material fact exist as to whether the appellants actually did commit acts that would violate a clearly established right, then summary judgment on qualified immunity is improper. *See City of Lancaster*, 883 S.W.2d at 657. Clearly, issues necessitating factual determinations abound in the instant lawsuit. As such, we find that the trial court properly denied appellants' motions for summary judgment. Appellants' points of error are overruled. With regard to appellants DPS, Milner, Thomas, Maley, and Pullen, the trial court's order is affirmed. As for defendant James R. Wilson, we note that the trial court's order denying both motions for summary judgment is silent. As defendant Wilson is not before this Court in Cause No. 09–93–267 CV, the portion of this opinion addressing the summary judgment issues is of no force and effect as to him.

To recapitulate, in Cause No. 09–93–166 CV, only appellants' Subpart A was sustained, and the injunction dissolved as to appellant DPS. All other sub-parts of appellants' point of error were overruled, and the trial court's order issuing the temporary injunction is affirmed as reformed. In Cause No. 09–93–267 CV, all points of error were overruled, and the trial court's denial of appellants' motions for summary judgment is affirmed.

TEMPORARY INJUNCTION ORDER AFFIRMED AS REFORMED; DENIAL OF SUMMARY JUDGMENT AFFIRMED.