**In the INTEREST OF S.W.H.**

No. 2–01–250–CV.

Court of Appeals of Texas,
Fort Worth.

March 21, 2002.

Neil L. Durrance, Denton, for appellant.

Hayes, Coffey & Berry, P.C., Thomas M. McMurray, Denton, for appellee.

PANEL A: HOLMAN and WALKER, JJ., and DAVID L. RICHARDS, J. (Sitting by Assignment).

## OPINION

DIXON W. HOLMAN, Justice.

After a bench trial on Appellees' suit affecting the parent child relationship, the trial court appointed Appellees sole managing conservators and Appellant, the nat-ural parent, as possessory conservator. In two points, Appellant argues the trial court erred in considering certain evidence of her actions during pregnancy and challenges the legal and factual sufficiency of the evidence to support the trial court's decision to appoint Appellees as S.W.H.'s sole managing conservators. We reverse.

### FACTUAL AND PROCEDURAL HISTORY

S.W.H. was born on July 29, 1997. Shortly after S.W.H. was born, Melissa Moffitt, a Child Protective Services ("CPS") worker, was assigned to intervene on behalf of S.W.H. after Appellant tested positive for drugs during a routine urine analysis performed by her probation officer. The second time Appellant violated her probation by testing positive for drugs, her probation officer recommended that Appellant's probation be revoked and that she be incarcerated in a Substance Abuse Felony Punishment Treatment Facility ("SAFP").

Appellant was a good friend of Appellees and had asked Appellees in the past to babysit S.W.H. Moffitt explained to Appellant that she could either voluntarily place S.W.H. with Appellees while she was incarcerated in the SAFP or CPS would have to take S.W.H. and place her in foster care. In late March, Moffitt accompanied Appellant to a local park where Appellant gave S.W.H. to Appellees so that she could enter the SAFP. Moffitt explained both to Appellant and Appellees that the arrangement was only temporary and that Appellant would get S.W.H. back when Appellant completed her time in the SAFP.

Appellant was admitted to the SAFP on April 7, 1998, and was discharged into a halfway house on January 7, 1999. On January 22, 1999, shortly before Appellant was released from the halfway house, Appellees filed suit to have themselves ap-

pointed sole managing conservators of S.W.H. Appellees also applied for a temporary restraining order prohibiting Appellant from any contact or attempted contact with S.W.H. After granting Appellees' application for a temporary restraining order and appointing Appellees as temporary managing conservators, the trial court set the case for hearing. On April 27, 2001, following a bench trial, the trial court entered its final order appointing Appellees sole managing conservators of S.W.H. and Appellant possessory conservator.[1]

### APPELLANT'S ACTS DURING PREGNANCY

■ In her first point, Appellant complains that the trial court improperly considered testimony regarding Appellant's alleged drug and alcohol use during pregnancy. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. TEX.R.APP. P. 33.1(a); *see also* TEX.R. EVID. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g).

Here, Appellee D.W. was the first to testify without objection that Appellant drank and smoked marijuana and perhaps used cocaine while she was pregnant with S.W.H. Next, Moffitt, the CPS worker, testified without objection that Appellant told her she had smoked marijuana while she was pregnant with S.W.H. Finally, Betty Hughes, Appellant's probation officer, testified without objection that Appellant told her she used "illicit substances" during pregnancy. Appellant also testified

that she used alcohol and marijuana while she was pregnant with S.W.H. In each instance, Appellant's counsel made no objection to the testimony. Therefore, even if it was erroneous for the trial court to consider evidence of Appellant's drug use while pregnant, Appellant waived any complaints regarding the testimony's admission. TEX.R.APP. P. 33.1(a). We overrule Appellant's first point.

### PRESUMPTIONS UNDER THE FAMILY CODE

■ The family code provides a "parental presumption" in child custody cases: "[U]nless the court finds that appointment of the parent ... would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent *shall be* appointed sole managing conservator." TEX. FAM.CODE ANN. § 153.131(a) (Vernon Supp.2002) (emphasis added). The code also provides that the presumption can be *rebutted if the court* finds that:

> (1) the parent has voluntarily relinquished actual care, control, and possession of the child to a nonparent, licensed child-placing agency, or authorized agency for a period of one year or more, a portion of which was within 90 days preceding the date of intervention in or filing of the suit; and

> (2) the appointment of the nonparent or agency as managing conservator is in the best interest of the child.

*Id.* § 153.373 (Vernon 1996). Consequently, a nonparent seeking custody may rebut the parental presumption and prevail over a parent by showing that appointing the parent as conservator would significantly impair the child's health or development or

---

1. In finding of fact number four, the trial court erroneously stated that Appellees were appointed joint managing conservators with Appellant. The trial court orally pronounced

in its judgment and stated elsewhere in its written order that Appellant was to be S.W.H.'s possessory conservator and Appellees S.W.H.'s managing conservators.

by showing that the parent voluntarily relinquished physical possession of the child for one year or more. *See In re M.W.*, 959 S.W.2d 661, 665 (Tex.App.-Tyler 1997, no pet.).

## LEGAL AND FACTUAL SUFFICIENCY

■ Appellant argues the evidence is legally and factually insufficient to support the trial court's decision to appoint Appellees managing conservators instead of her. In determining a legal sufficiency, "no-evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cazarez*, 937 S.W.2d at 450; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996). There is more than a scintilla of evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex. 1992). However, when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex.1970). Even in a legal sufficiency review, "undisputed evidence that allows ... only one logical inference" is not disregarded. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 51 n. 1 (Tex.1997). In child custody cases, factual insufficiency is not an independent ground for asserting error; it is relevant in determining if the trial court abused its discretion. *See Seidel v. Seidel*, 10 S.W.3d

365, 368 (Tex.App.-Dallas 1999, no pet.); *In re A.D.H.*, 979 S.W.2d 445, 447 (Tex. App.-Beaumont 1998, no pet.).

## Voluntary Relinquishment

■ Appellees' brief quotes part of Appellant's testimony to support their contention that Appellant voluntarily relinquished S.W.H. to them sometime in January 1998. They argue that because Appellant voluntarily relinquished S.W.H. in January 1998, and was incarcerated in the SAFP and halfway house until April 1999, Appellant voluntarily relinquished S.W.H. for more than one year under section 153.373. Appellees contend that they rebutted the parental presumption by showing voluntary relinquishment for one year or more, and that the trial court did not err in appointing Appellant managing conservator. In its oral pronouncement of judgment, the trial court stated, "I find that [Appellant] voluntarily surrendered [S.W.H.] for more than a year to [Appellees] and that the appointment of [Appellees] to be the sole managing conservator[s] is in the best interest of the child."

The record, however, does not support the trial court's conclusion or Appellees' contention that Appellant voluntarily relinquished S.W.H. to Appellees for one year or more. Although Appellant stated that she left S.W.H. with Appellees in January because she was sentenced to a short term in county jail for testing positive for drugs, she testified that she got S.W.H. back from Appellees in early March for a short time until she was sentenced to the SAFP in late March.

Appellee D.W. testified that she thought it was around March 9 that Appellant voluntarily relinquished S.W.H. to Appellees for the final time before she was incarcerated in the SAFP. This testimony is consistent with Moffitt's testimony that she was assigned to S.W.H.'s case in February 1998, and later supervised the final time

Appellant relinquished possession of S.W.H. to Appellees in "at least March or April." Moreover, the trial court stated in its findings of fact that Appellant relinquished custody to Appellees on March 27, 1998. In light of the evidence in the record, it therefore appears that Appellant did not finally relinquish S.W.H. to Appellees until sometime in March 1998.

■ Because the one-year period the statute provided did not begin until March 1998, it did not expire until March 1999. Appellant filed her answer contesting Appellees' petition and seeking to be appointed managing conservator of S.W.H. on February 2, 1999, which controverts the claim that Appellant's relinquishment was "voluntary" until March 1999. By the time Appellant was released from incarceration in the SAFP and the halfway house in April, the trial court had already granted Appellees' application for a temporary restraining order prohibiting Appellant from contacting Appellees or S.W.H. and appointing Appellees temporary managing conservators. Accordingly, Appellant was *involuntarily* precluded from regaining physical possession of S.W.H. from Appellees within the year. *See In re M.W.*, 959 S.W.2d at 668 (holding relinquishment no longer "voluntary" under section 153.171 once a temporary restraining order is issued that precludes the parent from contacting the child in custody of a nonparent). We disagree with both Appellees and the trial court that Appellant voluntarily relinquished possession of S.W.H. for one year or more. Appellant clearly sought to regain physical possession of S.W.H. in February 1999, prior to the one-year anniversary of the date she relinquished S.W.H. to Appellees.

### Impairment of S.W.H.'s Health or Development

■ Although the record does not support Appellees' contention that section 153.373 applies to rebut the parental presumption, the presumption may also be rebutted under section 153.131 if the record demonstrates that Appellant's appointment as managing conservator is not in S.W.H.'s best interest because it would significantly impair her physical health or emotional development. *See* TEX. FAM. CODE ANN. § 153.131(a).

In *Lewelling v. Lewelling*, the supreme court reversed the lower court's decision to appoint a child's grandparents as managing conservators on grounds that it would significantly impair the child's physical health or emotional development. 796 S.W.2d 164, 165 (Tex.1990). The court found there was no evidence to rebut the parental presumption in that case even though the evidence showed: (1) that the mother had been abused by the child's father while she was pregnant and after the child was born; (2) a social worker recommended that the child be placed with the grandparents; (3) the child had lived most of its life with the grandparents; and (4) the mother was unemployed, did not have much money, had been admitted twice to a mental facility, and lived in crowded conditions. *Id.* at 165–67. The court held:

> [T]he nonparent must affirmatively prove by a preponderance of the evidence that appointment of the parent as managing conservator would *significantly impair* the child, either physically or emotionally. [Section 153.131] thus requires the nonparent to offer evidence of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child.

*Id.* at 167.

■ Here, it is undisputed that Appellant had a severe addiction and that she

was incarcerated because she twice tested positive for drug use in violation of her probation. However, none of this evidence regarding Appellant's actions more than four years ago demonstrates that appointing Appellant managing conservator today would significantly impair S.W.H.'s physical health or emotional development. It is uncontroverted that Appellant has remained clean and sober since March 27, 1998, when she was placed in the SAFP for treatment. Furthermore, evidence of past misconduct may not, by itself, be sufficient to show present parental unfitness as required to appoint a nonparent as conservator over a parent. *In re M.W.*, 959 S.W.2d at 666 ("When determining fitness of a parent, the material time to consider is the present.").

The only evidence in the record that appears to address Appellant's current living situation and how it might be detrimental to S.W.H.'s physical health or emotional development is Appellant's testimony about her live-in boyfriend, Shelby Halley. Appellant testified that Halley had lived with her and her other daughter in an apartment for approximately one and one-half years at the time of trial. Appellant stated that Halley drinks alcohol outside of their home after work every day. Appellant also testified that she and Halley have an agreement that he cannot come home when he is intoxicated or he will have to sleep in his truck.

■■■■ The trial court appeared to rely heavily on that testimony in making its decision that appointing Appellant managing conservator would not be in S.W.H.'s best interest, reciting in at least four of its findings of fact that Halley consumes alcohol and lives with Appellant, who is a recovering alcoholic and drug addict. Though it may be true that Halley uses alcohol and that Appellant is a recovering alcoholic, those facts alone are not evidence that S.W.H.'s physical health or emotional development will be significantly impaired by Appellant being appointed managing conservator, especially given undisputed evidence that Appellant has managed to stay clean during the one and one-half years she lived with Halley up to the time of trial. When a nonparent and a parent are both seeking managing conservatorship, "close calls" go to the parent in evidentiary review. *Id.* at 665–66; *Ray v. Burns,* 832 S.W.2d 431, 434 (Tex.App.-Waco 1992, no writ).

■■■■ Like the grandparents in *Lewelling,* Appellees here failed to "identify some act or omission committed by [Appellant] which demonstrates that naming her as managing conservator will significantly impair [S.W.H.'s] physical health or emotional development." *See Lewelling,* 796 S.W.2d at 168; *see also In re M.W.,* 959 S.W.2d at 665 ("Evidence must support the logical inference that some specific, identifiable behavior or conduct of the parent will probably cause the harm."). Evidence of Appellant's boyfriend's acts or omissions that merely lead to an inference of something that Appellant might do does not satisfy the standard set forth in *Lewelling* or in section 153.131. To withstand a "no-evidence" challenge, circumstantial evidence still must consist of more than a scintilla. *Blount v. Bordens, Inc.,* 910 S.W.2d 931, 933 (Tex.1995). A fact finder may not infer an ultimate fact from the evidence that merely gives rise to any number of inferences. *Lozano v. Lozano,* 52 S.W.3d 141, 148 (Tex.2001). In cases with only slight circumstantial evidence, something else must be found in the record to corroborate the probability of the fact's existence or non-existence. *Id.*

Moreover, Appellant presented evidence that S.W.H. would be well cared-for in Appellant's current living situation, while Appellees failed to provide any expert wit-

nesses or other evidence to establish that S.W.H. would be harmed by placing her with Appellant. The CPS caseworker, Moffitt, who was the only caseworker or socialworker to testify at the hearing, stated that, at the time she was assigned to intervene in February 1998, she had neither "concerns about the conditions of [Appellant's] home" or other "health or safety" concerns for S.W.H. Moffitt stated that although she was assigned to intervene because Appellant had tested positive for drugs, CPS never recommended that S.W.H. be taken from Appellant.

Moffitt testified, "I believe that in the best interest of the child if there's an opportunity for the biological mother to turn her life around and she can provide the proper care for that child, that it is in the best interest of the child [to return her to the mother]." Moffitt said she explained to Appellant and Appellees that the placement was a temporary situation: "What we're looking for in those types of situations is to reduce the risk to the child until those issues can be addressed within the nuclear family ... and then we expect that the child will go back to the parent after those issues are resolved." According to that testimony, it is apparent that CPS intended Appellees to return S.W.H. to Appellant once she completed treatment and corrected her problems.

■ In the face of uncontroverted evidence that Appellant has remained clean and sober since March 1998, has maintained steady employment, keeps a safe and stable home environment, and has bonded with S.W.H. during visitations since Appellant was released from treatment in 1999, we do not find evidence in the record that Appellant's appointment as managing conservator would significantly impair S.W.H.'s physical health or emotional development. Even the fact that a nonparent would be a better custodian of the child than the parent "is not sufficient

to rebut the parental presumption absent this impairment of physical health or emotional development." *Lewelling*, 796 S.W.2d at 166 (quoting 89–1 State Bar Section Report—Family Law 27 (J. Sampson ed.1989)).

■ It is an onerous burden to overcome the presumption that a child's natural parent should be appointed sole managing conservator absent some specific act or omission that demonstrates present parental unfitness. *See id.* at 166–67. Although trial courts should be afforded broad discretion in deciding family law questions, the legislature has explicitly limited the exercise of that discretion when a nonparent seeks appointment as managing conservator. *Id.* at 168. We sustain Appellant's second point.

### Conclusion

We reverse the trial court's decision to appoint Appellees managing conservators and remand to the trial court for rendition of judgment that the natural parent, Appellant, be named managing conservator.