Petition for Writ of Mandamus Conditionally Granted and Opinion filed
August 12, 2003















Petition for
Writ of Mandamus Conditionally Granted and Opinion filed August 12, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-03-00687-CV

____________

 

IN RE SARA OSTROFSKY, Relator

 

 

___________________________________________

 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 

___________________________________________

 

O P I N I O
N

            In this original proceeding, relator, Sara Ostrofsky,
seeks a writ of mandamus ordering the respondent, the Honorable Annette Galik, to vacate her order signed on May 6, 2003.  We conditionally grant the writ.

Background

            Sara and Marc Ostrofsky
were divorced on May 6,
 2002.  Under the decree of
divorce, relator and Marc were appointed joint
managing conservators of the three minor children, and relator
was granted certain exclusive rights, including the right to make educational
decisions and to determine the children’s primary residence.  Marc was granted possession of the children
on the second, fourth, and fifth weekends, on Wednesday evenings for two hours,
for alternating holidays, and for half the summer.

            On October 8, 2002, relator
filed a petition to modify the decree, seeking temporary orders prohibiting
Marc from contact with relator, and requesting a
temporary restraining order and temporary injunction.  In relator’s
affidavit attached to her petition, she recounts an incident which occurred in
early October 2002.  Relator
described verbal harassment from Marc and a confrontation followed by assault
charges[1] filed against relator.  Relator also
recounted alleged statements by Marc to the children threatening discontinuation
of his periods of possession as a disciplinary tactic.  Some of Marc’s emails to the children were
attached to relator’s affidavit.

            The court signed a temporary
restraining order.  Mutual temporary
injunctions were signed on November
 4, 2002.  On November 7, 2002, Marc
responded to relator’s petition by filing an original
answer and a counter-petition, in which he requested that the court modify his
periods of possession and the parties’ rights and duties.

            The parties engaged in a settlement
meeting, and reached agreements which were approved by the children’s
therapist, Dr. Kit Harrison, and Marc’s therapist, Dr. Reitman.  Relator prepared an
order, but it was not signed by Marc.  Relator then filed a motion for temporary orders,
requesting a hearing.

            On February 27, 2003, relator
filed an emergency motion for termination of Marc’s access to the children or
for supervised access, based on an incident outlined in an attached
affidavit.  Relator
asserted that Marc yelled at her during one of the children’s basketball games,
and kicked her in the chest.[2]  On March 5, 2003, the trial court signed an emergency order,
prohibiting relator and Marc from coming within 100
yards of each other and prohibiting Marc’s access to the children until further
order of the court, with any contact to be conducted in the presence of Dr.
Harrison.  Relator
subsequently filed an application for protective order.  

            On March 21, 2003, the trial court signed a
temporary ex parte protective order and an order
setting a hearing for April 14,
 2003.  A few days before
the hearing, Marc filed an application for protective order and motion for
temporary orders.  On April 11, 2003, the three
children filed a petition in intervention through their attorney.[3]  Marc filed a motion to strike the
intervention, which the trial court denied.

            The trial court held a three-day
evidentiary hearing on all of the petitions and motions.  Both parties presented testimony and the
trial judge interviewed the minor children in chambers.  On May 6, 2003, the trial judge signed a temporary order in which
she denied the applications for protective orders filed by both parties.  The trial judge appointed Dr. Kit Harrison to
conduct psychological evaluations of the children and parents, modified the decree
to require no contact between the parents at visitation pick-up and drop-off
times, and added other procedures intended to reduce contact between the
parents.  The ruling most pertinent to
this proceeding is the trial court’s order that the children attend boarding
school commencing with the 2003-2004 school year.

Entitlement to Seek Mandamus Relief

            Relator
raises three arguments in this proceeding. 
First, she argues the trial court abused its discretion by failing to
apply the requirements in section 156.006 of the Texas Family Code.  Second, she claims the May 6, 2003 order violates her
fundamental right under the Constitution to make decisions concerning the care,
custody and control of her children. 
Finally, relator asserts the trial court exercised
a power it did not possess when it ordered the children to attend boarding
school because the trial court has no authority to make a placement outside the
home unless a suit is brought by a governmental entity under Chapter 262 of the
Family Code.

            Mandamus relief is available if the
trial court abuses its discretion, either in resolving factual issues or in
determining legal principles, and there is no other adequate remedy by
appeal.  See Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex.
1992).  A trial court abuses its
discretion if “it reaches a decision so arbitrary and unreasonable as to amount
to a clear and prejudicial error of law.” 
Johnson v. Fourth Court of
Appeals, 700 S.W.2d 916, 917 (Tex.
1985).  When alleging that a trial court
abused its discretion in its resolution of factual issues, the party must show
the trial court could have reasonably reached only one decision.  Id. at 918.  As to
determination of legal principles, an abuse of discretion occurs if the trial
court clearly fails to analyze or apply the law correctly. See Walker, 827 S.W.2d at 840.

            In determining whether the writ
should issue, we must further determine whether the party has an adequate
remedy by appeal.  Id.  Mandamus is
intended to be an extraordinary remedy, only available in limited circumstances
“involving manifest and urgent necessity and not for grievances that may be
addressed by other remedies.”  Holloway v. Fifth Court of Appeals, 767
S.W.2d 680, 684 (Tex.
1989).  An appellate remedy is not
inadequate merely because the party may incur more expense and delay than in
obtaining a writ.  Walker, 827 S.W.2d at 842. 
Temporary orders, entered while a motion to modify in a suit affecting
the parent-child relationship is pending, are interlocutory and there is no
statutory provision for appeal of these orders. 
See Dancy
v. Daggett, 815 S.W.2d 548, 548 (Tex. 1991); In re Lemons, 47 S.W.3d 202, 203-04
(Tex. App.–Beaumont 2001, orig. proceeding). 
Because the order of May 6,
 2003, is a temporary order entered during the pendency
of petitions to modify filed by both parties, we find relator
has no adequate remedy by appeal.

Application of Tex. Fam. Code § 156.006

            Relator
first claims the trial court’s order effectively changed the designation of relator’s exclusive right to determine the primary
residence of the children in violation of the requirements of section
156.006.  Section 156.006 states:

 

 class=Section2>

While a suit for modification is pending, the court
may not render a temporary order that has the effect of changing the designation
of the person who has the exclusive right to determine the primary residence of
the child under the final order unless

 

 class=Section3>

(1) the order is necessary because the child’s
present living environment may endanger the child’s physical health or
significantly impair the child’s emotional development;

(2) the person designated in the final order has
voluntarily relinquished the primary care and possession of the child for more
than six months and the temporary order is in the best interest of the child;
or

(3) the child is 12 years of age or older and has
filed with the court in writing the name of the person who is the child’s
preference to have the exclusive right to determine the primary residence of
the child and the temporary order designating that person is in the best
interest of the child. 

 

 

 class=Section4>

Tex. Fam. Code Ann. §
156.006(b) (Vernon 2002).  Subsections
(2) and (3) are not applicable here. 
Accordingly, the only issue is whether the trial court’s order falls
under this statute and, if so, whether any evidence supports the trial court’s
order based on the requirements of subsection (1). 

(1) Is the May 6, 2003, order a temporary order that effectively deprives relator
of the right to determine the children’s primary residence?

            This order is a temporary order,
entered during the pendency of relator’s
petition to modify and Marc’s counter-petition to modify.  Accordingly, the statute applies to this
order.  Next, we must determine whether
the order has the effect of changing the designation of the person who has the
exclusive right to determine the primary residence of the child under the final
order.  

            In the Decree of Divorce, relator was granted the exclusive right to establish the
children’s primary residence.  Thus, the
children resided with relator at all times except
during the periods designated for Marc’s possession. 

            In the temporary order, the trial
court does not specifically state that it is changing relator’s
exclusive rights; however, the following language is included:  “until the parties, MARC OSTROFSKY and SARA
OSTROFSKY, have undergone a full psychological evaluation and concluded
counseling as ordered, that it is not in the best interest of these children to
live with either parent.”  The order
further provides that the children “shall attend a boarding school commencing
with the 2003-2003 academic semester and shall remain in that boarding school
or any subsequent school approved by this court until further order of the
Court.” 

            Although the trial court states in
its order that there shall be no change in Marc’s periods of possession, relator is deprived of all possession other than certain
holidays.  Because the order requires the
children to leave relator’s residence and live at
boarding school, we find the temporary order deprives relator
of any discretion inherent in the right to determine the children’s primary
residence.  Thus, we hold that the
temporary order effectively deprives relator of the
right to determine the children’s primary residence.

            Marc claims that relator
acquiesced to the possibility of the children attending boarding school.  We disagree. 
Marc’s attorney asked relator during the
hearing whether “her position that [she] would do anything to help these
children include[d] agreeing that these children go to boarding school?”  Relator answered,
“If that will be for the benefit of the children, that will be hopefully the
last resort.”  We do not find this answer
to constitute agreement or acquiescence to deprivation of her right to
determine the children’s primary residence.

(2) Was the order necessary
because the children’s living environment may endanger the children’s physical
health or significantly impair their emotional development?  

            Although the order states that its
ruling is based on the “best interest of the children,” section 156.006
requires more.  It requires a finding
that “the child’s present living environment may endanger the child’s physical
health or significantly impair the child’s emotional development.”  Tex. Fam. Code Ann. § 156.006(b)(1) (Vernon 2002).  Thus, the trial court was required to find
that the children’s living environment with relator
may “endanger their physical health or significantly impair their emotional
development.” The supreme court has held that the term “‘endanger’ means more than
a threat of metaphysical injury or the possible ill effects of a
less-than-ideal family environment . . . .” 
Tex. Dept. of Human Servs. v.
Boyd, 727 S.W.2d 531, 533 (Tex.
1987).  The endangering conduct need not
be directed at the child and the child need not have actually suffered
injury.  Id.

            Although it has no precedential value, an unpublished opinion from the San
Antonio Court of Appeals (and presently the only case interpreting the current
version of the statute) is enlightening. 
In that case, the divorce decree named Sondra Escamilla as the person
with the exclusive right to determine the primary residence of the
children.  In re Escamilla, 2002 WL 1022945 (Tex. App.–San Antonio, 2002,
orig. proceeding)(not designated for publication).  The ex-husband, Francisco, filed a petition
to modify this provision.  Id. at
*1.  After an evidentiary hearing, the
trial judge signed a temporary order giving Francisco the exclusive right to
determine the children’s primary residence and found that the order was made
“for the safety and welfare of the children” and was “in the best interest of
the children.”  Id.  Sondra sought mandamus relief.  The San
 Antonio court found Sondra had no adequate
remedy by appeal and reviewed the evidence, finding that, even if the court
discredited Sondra’s testimony, there was no evidence that living with Sondra
might endanger the children’s physical health or significantly impair the
children’s emotional development.  Id. at
*2-3.  The evidence showed that Sondra
did not check for completion of school assignments, the children and their
clothes were dirty upon return from visitation with Sondra, Sondra did not
visit the children at school, her apartment was too small, the children were
delivered to school with uncombed dirty hair, Sondra did not outfit the
daughter with a training bra, Sondra sent the children to school with dirty
clothes, and Sondra exposed the children to inappropriate music.  Id.  The court found this evidence to be, at most,
“evidence that children are children; and Francisco’s child-rearing methods and
preferences differ from his ex-wife’s.”  Id.  There was also an allegation of Sondra not
paying proper attention to the children’s medical needs, but the undisputed
testimony did not bear that out.  Id.  Finding no evidence establishing that a
temporary order changing the designation of the person with the exclusive right
to determine the children’s primary residence was necessary to ensure their
physical and emotional health and development, the court found an abuse of
discretion and granted mandamus relief.  Id. at *2-3.

            Another section of the Family Code
has language very similar to that in section 156.006.  Former section 156.203 provided for
replacement of a joint managing conservatorship with
a sole managing conservatorship if “the child’s
present living environment may endanger the child’s physical health or
significantly impair the child’s emotional development . . . and . . . the
appointment of a sole managing conservator would be a positive improvement for
and in the best interest of the child.” 
Act of June 16,
 2001, 77th Leg., R.S., ch. 1289, 2001
Tex. Gen. Laws 3108 (current version at Tex.
Fam. Code Ann. § 156.102 (Vernon 2002)).  The current version of this statute, section
156.102, allows modification of the exclusive right to determine primary
residence of the child if there is proof that “the child’s present environment
may endanger the child’s physical health or significantly impair the child’s
emotional development.”  Tex. Fam. Code Ann.
§ 156.102(a)-(b)(1) (Vernon 2002). 
Because the requirements of these statutes contain similar language to
the provisions of section 156.006, we may look for guidance in cases
interpreting this language.

            In Lewelling v. Lewelling, 796 S.W.2d 164 (Tex.
1990), the supreme court held that, under a prior version of section 156.102,
there must be evidence of “specific actions or omissions of the parent that
demonstrate an award of custody to the parent would result in physical or
emotional harm to the child.”  The court
found no evidence of significant impairment of the child’s physical health or
emotional development where the mother had been a victim of spousal abuse, was
unemployed, was living in crowded conditions, and had voluntarily committed
herself to a hospital.  Id. at
165-66.  Other courts construing this
same language found significant impairment to the child’s physical health or
emotional development only upon evidence of serious acts or omissions by the
parent.  See In re K.R.P., 80 S.W.3d 669, 676 (Tex. App.–Houston [1st Dist.]
2002, pet. denied)(upholding trial court finding of significant impairment
where the father had been convicted of several crimes before and after the
child’s birth, had assaulted the child’s mother, had abused alcohol, smoked in
the house despite knowing of the child’s asthma and allergies, and showed
little interest in the child’s school and extracurricular activities); In re S.W.H., 72 S.W.3d 772, 778 (Tex.
App.–Fort Worth 2002, no pet.)(reversing finding of significant impairment of
child’s physical health or emotional development based on evidence mother had
overcome severe drug addiction, despite her prior incarceration for drug use
and living with boyfriend who drank alcohol on a daily basis, because no
evidence showed child would be harmed by current conditions); In re A.P.S., 54 S.W.3d 493, 496-97
(Tex. App.–Texarkana 2001, no pet.)(upholding finding of significant impairment
despite contradictory evidence that mother physically abused children,
threatened to kill herself, could not hold a job, failed to seek proper medical
attention for the children, and used alcohol); In re R.D.Y., 51 S.W.3d 314, 321 (Tex. App.–Houston [1st Dist.]
2001)(upheld finding of detriment to child’s physical health or emotional
development where evidence showed CPS had reported physical abuse of child,
child was left alone at a church, dirty and hungry, child was afraid of mother
who had attacked him with a knife and bathed him in bleach), pet. denied, 925 S.W.3d 433 (Tex. 2002).

            Our review of the record in this
case reveals no proof of specific actions or omissions by relator
that would endanger the physical health of the children.  The only testimony concerning physical danger
related to occasions when the children were with Marc.  Dr. Harrison testified during the evidentiary
hearing that, as of April 15,
 2003, he considered Marc a danger to his children from a physical
and/or emotional standpoint due to his intermittent explosiveness.  Because there is no evidence of a danger to
the children’s physical health in their living environment with relator, the trial court abused its discretion to the
extent it based the temporary order on a determination that residing with relator might endanger the children’s physical health.

            Other than testimony that relator had engaged in inappropriate communications with
Marc, some of which one or more of the children witnessed, there was no
testimony of specific acts or omissions by relator
that would significantly impair the children’s emotional development.  The trial judge interviewed the children in
chambers and the children expressed a desire to remain living with their
mother.  The children only expressed a
desire to see less of their father.  

 class=Section5>

            Dr. Harrison testified that, in
September 2002, when he first began seeing the children, they displayed some
emotional difficulties.  The two older
children are twin girls, who are now 13 years old.  Dr. Harrison found that these two girls were
extremely shy, anxious, and not interested in social interactions, but were devoted
to school.  The youngest child, now 11
years old, had more serious problems at that time, according to Dr.
Harrison.  He testified that in September
2002, this child was angry, depressed, verbally abusive, defiant, disobedient,
and rebellious.  Dr. Harrison also
testified that, in response to Marc’s disciplinary tactic of using threats, the
youngest child had a variety of responses, including hurt feelings, isolation
and withdrawal, aggressiveness, or “simply giving up coupled with suicidal
ideation.”  Dr. Harrison added that he
has had concerns that the twins might have suicidal thoughts, but he never
observed anything to support those concerns. 
Dr. Harrison further testified that the children had shown marked
improvement by early 2003 after counseling and relator’s
implementation of Dr. Harrison’s recommendations for improved interaction.  According to Dr. Harrison, relator brought the children for professional counseling
when she thought it was necessary, and usually after some crisis.  Thus, Dr. Harrison testified that the three
children exhibited some emotional problems in 2002, but that there had been
improvement since that time.

            When testifying about the children’s
present condition, Dr. Harrison noted the children had experienced some
regression after the altercation between the parents in February 2003; however,
Dr. Harrison specifically testified that removing the children from their home
and placing them in boarding school was not warranted at this time.  Dr. Harrison testified that this type of
placement should have been included in the options in 2002, but he has not seen
anything since then to warrant placement. 
As to whether placement in a boarding school would be in the best
interest of the children, Dr. Harrison testified as follows:

 

 class=Section6>

Probably not at this point in time.  I think there should be levels of care placed
so that there is always a backup plan; and I would consider placement as kind
of like a, you know, tertiary plan in the event that other interventions fail.

 

 class=Section7>

            Regarding the youngest child, Dr.
Harrison was more specific.  He testified
that the youngest child would feel she was being punished if she were removed
from relator’s home. 
He further testified that removal from the home was not the first line
of intervention at this time, even though it was a second or third line of
intervention in 2002.  Dr. Harrison
testified that he did not, at this time, recommend boarding school for the
children.  Dr. Harrison’s recommendation
was for reduced contact between the parents and evaluations and counseling for
the parents.  This testimony does not
support the need to remove the children from their residence and place them in
boarding school.

            While there is evidence that the
parents have a poor relationship with each other, there is no evidence of
specific acts or omissions by relator that support a
finding by the trial court that the children are at risk of significant impairment to their
emotional development.  Having found that
the temporary order has the effect of changing the designation of the person
who has the exclusive right to determine the primary residence of the child
under the final order and that no evidence supports a finding that the order is
necessary because the children’s present living environment with relator may endanger the children’s physical health or
endanger their emotional development, we find the trial court abused its
discretion in entering the temporary order.

Constitutional Rights and
Application of Chapter 262

            Having found an abuse of discretion
by the trial court under section 156.006, we need not address the
constitutional ground raised by relator.  See City of Houston v. First City, 827
S.W.2d 462, 482 (Tex. App.–Houston [1st Dist.] 1992, writ denied)(Cohen, J.,
concurring)(holding court should avoid constitutional decisions if case can be
decided on nonconstitutional grounds).  Further, we need not address relator’s argument under Chapter 262.

Conclusion

            Because the trial court abused its
discretion in issuing the temporary order of May 6, 2003, we conditionally grant the writ
of mandamus.  We are confident the trial
court will vacate the temporary order of May 6, 2003.  If the trial
court fails to do so, the writ will issue.

                                                            /s/        Charles W. Seymore

                                                                        Justice

Petition Conditionally
Granted and Opinion filed August 12, 2003.

Panel
consists of Justices Anderson, Seymore, and Guzman.

 











            [1]  The record reveals that, during this incident, relator kicked Marc in the shins.





            [2]  The record includes conflicting testimony regarding
Marc’s actions at the basketball game.  Relator and her father testified that Marc kicked relator; Marc and his family testified that Marc only
kicked a videocamera.





            [3]  The children are represented by an attorney hired by relator.