Randy Lorine Carroll v. State














IN THE
TENTH COURT OF APPEALS
 

No. 10-00-393-CR

Â Â Â Â Â RANDY LORINE CARROLL,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the County Court at Law No. 2
McLennan County, Texas
Trial Court # 993496 CR2
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â A jury convicted Randy Lorine Carroll of driving while intoxicated. The court sentenced him
to seventy daysâ confinement in the county jail. Carroll perfected a pro se appeal.
Â Â Â Â Â Â We abated this cause on October 3, 2001 for a hearing to ensure that Carroll had knowingly
and intelligently chosen to represent himself on appeal. See Faretta v. California, 422 U.S. 806,
835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562, 581-82 (1975); Collier v. State, 959 S.W.2d 621,
625-26 & n.8. (Tex. Crim. App. 1997). Carroll failed to appear at a hearing scheduled by the
trial court for October 26. In the meantime, Carroll advised us of a new address. We issued a
supplemental abatement order on November 28 notifying the trial court of Carrollâs new address. 
The trial court set a second abatement hearing for December 21 and sent notice to Carroll at the
new address. Again, Carroll failed to appear.
Â Â Â Â Â Â We issued a third abatement order on January 23, 2002 directing the trial court to determine
whether Carroll has abandoned his appeal. The trial court set this matter for hearing on February
14 and sent notice to Carroll at his last known address. Again, Carroll failed to appear. The trial
court filed findings of fact and conclusions of law in which the court concluded, âCarroll has
failed to act with appropriate diligence in pursuing his appeal, and . . . although having been
giving numerous opportunities to respond, has defaulted and therefore has abandoned his appeal.â
Â Â Â Â Â Â The trial court and this Court have made every effort to protect Carrollâs rights. He has
chosen not to take advantage of the opportunities afforded him. Accordingly, further abatement
of this cause would be futile. See Wilson v. State, 39 S.W.3d 390, 391 (Tex. App. âWaco 2001,
no pet.) (per curiam). The trial court has determined that Carroll has abandoned his appeal. See
Ashcraft v. State, 802 S.W.2d 905, 906 (Tex. App.âFort Worth 1991, no pet.); Meza v. State,
742 S.W.2d 708, 708 (Tex. App.âCorpus Christi 1987, no pet.) (per curiam). We have
submitted this cause without briefs and have reviewed the record for fundamental error. See Tex.
R. App. P. 38.8(b)(4); Lott v. State, 874 S.W.2d 687, 688 (Tex. Crim. App. 1994); Wade v.
State, 31 S.W.3d 723, 725 (Tex. App.âHouston [1st Dist.] 2000, pet. refâd) (per curiam);
Ashcraft, 802 S.W.2d at 906; Meza, 742 S.W.2d at 709.
Â Â Â Â Â Â Our review of the record discloses no âunassigned fundamental error.â See Lott, 874 S.W.2d
at 688. Accordingly, we affirm the judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â REX D. DAVIS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Gray
Affirmed
Opinion delivered and filed April 17, 2002
Publish
[CR25]



span
style='font-family:Palatino'>Statutes Governing Prevention of International

Parental Child Abduction

Â 

   The Texas Legislature enacted a series
of statues aimed at international parental child abduction in May 2003.Â  See
Act of May 28, 2003, 78th Leg., R.S., ch. 612, Â§ 1, 2003 Tex. Gen. Laws 2002,
2002-04 (codified as Tex. Fam. Code Ann.
Â§Â§ 153.501-.503).Â  Texas was the first state to enact such legislation.Â  See
Patricia M. Hoff, ÂUUÂ UCAPA: Understanding and Using UCAPA to Prevent Child
Abduction, 41 Fam. L.Q. 1, 3
n.8 (2007).Â  ÂIn August 2003, the National Conference of Commissioners on
Uniform State Laws appointed a study committee to explore the feasibility of a
uniform law to prevent international child abduction.ÂÂ  Id. at 3 n.11.Â 
During this study period, Arkansas, California, Florida and Oregon enacted such
laws.Â  Id. at 3 n.8.Â  The Uniform Child Abuse Prevention Act was
formally approved by the Uniform Law Commissioners in 2006.Â  Id. at 1; see
also Unif. Child Abuse Prevention
Act Â§Â§ 1-13, 9 Part IA U.L.A. 33 (Supp. 2008).Â  It has since been
adopted by seven states[3] and
is under consideration in six others[4] plus
the District of Columbia.Â  NatÂl
Conference of CommÂrs on Unif. State Laws, A Few Facts About the Uniform Child
Abduction Prevention Act, http://www.nccusl.org/Update/uniformact_factsheets/uniformacts-fs-ucapa.asp
(last visited Oct. 30, 2008).

Â Â Â Â Â Â Â Â Â Â Â  According to the pertinent bill
analyses, the Texas legislation was based on a study on international abduction
conducted by the American Bar Association Center on Children and the Law and
funded by the United States Department of Justice, Office of Juvenile Justice
and Delinquency Prevention.[5]Â  See
House Comm. on Juvenile Justice &
Family Issues, Bill Analysis, Tex. H.B. 1899, 78th Leg., R.S. (2003); House Research Org., Bill Analysis, Tex. H.B. 1899, 78th Leg., R.S. (2003); see also Janet R. Johnston et al., Early
Identification of Risk Factors for Parental Abduction, Juvenile Justice Bulletin (Office of
Juvenile Justice & Delinquency Prevention, U.S. DepÂt of Justice), Mar.
2001, at 1 (describing funding of study by OJJDP).

Â Â Â Â Â Â Â Â Â Â Â  The ABA study (and subsequent reports
and publications) identified a list of factors which are indicative of a risk
of abduction.Â  See, e.g., Patricia
M. Hoff, Family Abduction: Prevention and Response 7-8 (5th ed., National Center for Missing and Exploited Children 2002); Johnston et al., Early
Identification of Risk Factors for Parental Abduction, passim. Â These
risk factors appear prominently in the Texas legislation as well as in the
UCAPA.Â  See Tex. Fam. Code Ann.
Â§ 153.502 (Vernon Supp. 2008); Unif.
Child Abuse Prevention Act Â§ 7(a), 9 Part IA U.L.A. at 41-42.Â  Because
of these similarities[6] and
because the Texas statutes have been addressed in only one published decision,
we will refer to materials construing the UCAPA as persuasive authority for
construing the Texas statutes.

Â Â Â Â Â Â Â Â Â Â Â  Section 153.503 of the Family Code
permits a trial court to impose an abduction prevention measure such as
supervised visitation if the court finds it necessary because Âcredible
evidenceÂ has been presented which indicates a Âpotential riskÂ of
international abduction.[7]Â  See
Tex. Fam. Code Ann. Â§Â§ 153.501(a),
153.503(2) (Vernon Supp. 2008); cf. Unif.
Child Abuse Prevention Act Â§ 4(a), 9 Part IA U.L.A. at 38 (requiring
finding Âthat the evidence establishes a credible risk of abductionÂ).

Â Â Â Â Â Â Â Â Â Â Â  Section 153.501(b) provides four
factors a court Âshall considerÂ in determining whether to impose abduction
prevention measures:

(1) the public policies of this state described by
Section 153.001(a) and the consideration of the best interest of the child
under Section 153.002;

Â 

(2) the risk of international abduction of the
child by a parent of the child based on the court's evaluation of the risk
factors described by Section 153.502;

Â 

(3) any obstacles to locating, recovering, and
returning the child if the child is abducted to a foreign country; and

Â 

(4) the potential physical or psychological harm
to the child if the child is abducted to a foreign country.

Â 

Tex. Fam. Code Ann. Â§ 153.501(b) (Vernon Supp. 2008); see Boyo v.
Boyo, 196 S.W.3d 409, 423 (Tex. App.ÂBeaumont 2006, no pet.).

Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  We review a courtÂs decision to impose
Âabduction prevention measures,Â which are based on a finding that there is a
potential risk of international abduction, under an abuse-of-discretion
standard.Â  See Karenev v. Kareneva, No. 02-06-00269-CV, 2008 WL
755285, at *1 n.5 (Tex. App.ÂFort Worth Mar. 20, 2008, no pet.) (mem. op.); Boyo,
196 S.W.3d at 424.Â  We do not conduct an independent review of findings of fact
in such a case under traditional legal and factual sufficiency standards.Â  In
re Z.A.T., 193 S.W.3d 197, 203 (Tex. App.ÂWaco 2006, pet. denied); accord
In re Keller, 233 S.W.3d 454, 459 (Tex. App.ÂWaco 2007, pet. denied)
(guardianship proceeding).Â  Rather, legal and factual sufficiency are factors
which can be considered in determining whether an abuse of discretion has
occurred.Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  We view the evidence in the light most
favorable to RespondentÂs decision.Â  Keller, 233 S.W.3d at 459; Paradigm
Oil, Inc. v. Retamco Operating, Inc., 161 S.W.3d 531, 536 (Tex. App.ÂSan Antonio
2004, pet. denied).Â  An abuse of discretion does not occur when the decision is
based on conflicting evidence.Â  Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); Keller, 233 S.W.3d at 459; Smith v. McCarthy, 195 S.W.3d 301, 305
(Tex. App.ÂFort Worth 2006, pet. denied).Â  Conversely, an abuse of discretion does
occur when a court acts Âwithout reference to any guiding rules and principlesÂ
or in an arbitrary and unreasonable manner.Â  City of San Benito v. Rio
Grande Valley Gas Co., 109 S.W.3d 750, 757 (Tex. 2003) (quoting Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)); In
re J.D.M., 221 S.W.3d 740, 742 (Tex. App.ÂWaco 2007, no pet.).

Potential Risk of Abduction

Â Â Â Â Â Â Â Â Â Â Â  Section 153.502 provides statutory
Âabduction risk factorsÂ for a court to consider in determining whether there
is a potential risk of international abduction.Â  See Tex. Fam. Code Ann. Â§ 153.502 (Vernon Supp. 2008).Â  Subsection (a) provides a list of six preliminary factors the court
Âshall consider,Â including whether the parent: (1) Âhas taken, enticed away,
kept, withheld, or concealedÂ the child; (2) has threatened to do so; (3)
Âlacks financial reason to stay in the United StatesÂ; (4) Âhas recently
engaged in planning activities that could facilitate the removal of the child
from the United StatesÂ; (5) ÂhasÂ  a history of domestic violenceÂ; or (6) Âhas
a criminal history or a history of violating court orders.ÂÂ  Id. Â§ 153.502(a);
see Karenev, 2008 WL 755285, at *2.

Â Â Â Â Â Â Â Â Â Â Â  If upon consideration of the factors
in subsection (a) the court finds Âcredible evidence of a risk of abduction,Â
Âthe court shall also considerÂ:

(1) whether the parent has strong familial,
emotional, or cultural ties to another country, particularly a country that is
not a signatory to or compliant with the Hague Convention on the Civil Aspects
of International Child Abduction; and

Â 

(2) whether the parent lacks strong ties to the United States, regardless of whether the parent is a citizen or permanent resident of the United States.

Â 

Tex. Fam. Code Ann. Â§ 153.502(b); see Karenev, 2008 WL 755285,
at *2; Boyo, 196 S.W.3d at 423.

Â Â Â Â Â Â Â Â Â Â Â  In addition, if the court finds
Âcredible evidence of a risk of abductionÂ under subsection (a), Âthe court may
also considerÂ: (1) Âwhether the parent is undergoing a change in status with
the United States Immigration and Naturalization Service that would adversely
affect that parentÂs ability to legally remain in the United StatesÂ; (2)
whether INS has denied the parentÂs application for citizenship; (3) whether
the parent has forged or presented misleading or false evidence to obtain a
visa, passport, or other identification card or has made any misrepresentation
to the federal government; or (4) whether the foreign country to which the
parent has ties presents legal or practical obstacles to the recovery and return
of a child who is abducted to that country or poses a risk of harm to the
child.[8]Â  Tex. Fam. Code Ann. Â§ 153.502(c); see
Boyo, 196 S.W.3d at 424.

Â Â Â Â Â Â Â Â Â Â Â  Unlike the dichotomy of risk factors
provided in section 153.502, section 7 of the UCAPA lists thirteen risk factors
without assigning greater weight to one over another.Â  See Unif. Child Abuse Prevention Act Â§ 7(a),
9 Part IA U.L.A. at 41-42.Â  Most of the factors listed in section 7 of the
UCAPA are substantially similar to the factors listed in section 153.502.

RespondentÂs Findings

Â Â Â Â Â Â Â Â Â Â Â  Here, Respondent found under
subsection (a)(4) that Axel Âhas recently engaged in planning activities that
could facilitate [A.J.Âs] removalÂ by liquidating assets.Â  Under subsection
(b)(1), Respondent found that Axel has strong ties[9]
to Austria and Mexico.[10]Â 
Respondent found under subsection (c) that: ÂAustria and/or MexicoÂ:

(1)Â Â 
Â Â Â Â Â  present obstacles to the
recovery and return of an abducted child;

Â 

(2)Â Â 
Â Â Â Â Â  have no legal mechanisms
for the immediate and effective enforcement of a child custody order;

Â 

(3)Â Â 
Â Â Â Â Â  have local laws or
practices that would:

Â 

(a) enable Axel to prevent Lucia from contacting A.J.
without due cause;

Â 

(b) restrict Lucia from freely traveling to or
exiting from the country because of gender, nationality, or religion; and

Â 

(c) restrict A.J.Âs ability to legally leave the
country when she reaches the age of majority because of gender, nationality, or
religion;

Â 

Respondent further found that Mexico in
particular: (1) is a country for which the State Department has issued a travel
warning to U.S. citizens; and (2) poses a risk to A.J.Âs physical health and
safety because of her specific circumstances and because of Âhuman rights
violations committed against children, including child labor and lack of child
abuse laws.ÂÂ  Id. Â§ 153.502(c)(4)(A), (B), (C), (E), (J).

Analysis

Â Â Â Â Â Â Â Â Â Â Â  Sigmar first complains that Respondent
heard evidence which would support an affirmative finding on only one of the
six preliminary factors listed in subsection (a) for determining whether there
is a risk of international abduction and disregarded evidence which negates an
affirmative finding on the other five factors.Â  It is not clear whether Sigmar
believes there must be evidence supporting affirmative findings on all six
preliminary factors or a majority of them or some other quantum.Â  Nevertheless,
our review of the pertinent statutory language leads us to the conclusion that
an affirmative finding on only one of these preliminary factors (if supported
by the evidence) is all that is required to proceed to a consideration of the
additional factors listed in subsections (b) and (c).

Â Â Â Â Â Â Â Â Â Â Â  To begin with, the statute states that
Âthe court shall consider evidenceÂ relevant to the six factors.Â  Id. Â§ 153.502(a) (emphasis added).Â  The statute does not specify the number of
factors on which a court must make an affirmative finding.Â  See, e.g., Boyo,
196 S.W.3d at 423 (record contained evidence to support affirmative findings on
two of the six preliminary factors).Â  In addition, the statute lists these
factors in the disjunctive.

Â Â Â Â Â Â Â Â Â Â Â  The comment to section 7 of the UCAPA
suggests that no particular quantum of risk factors is required.

The more of these factors that are present, the
more likely the chance of an abduction. Â However, the mere presence of one or
more of these factors does not mean that an abduction will occur just as the
absence of these factors does not guarantee that no abduction will occur.

Â 

Unif. Child Abuse
Prevention Act Â§ 7 cmt., 9 Part IA
U.L.A. at 42.

Â Â Â Â Â Â Â Â Â Â Â  For these reasons, we hold that
evidence sufficient to support an affirmative finding on only one of the six
preliminary factors may constitute Âcredible evidence of a risk of abductionÂ
sufficient for a court to consider the additional factors listed in subsections
(b) and (c).

Â Â Â Â Â Â Â Â Â Â Â  Here, Respondent found that Axel had
Ârecently engaged in planning activities that could facilitate [A.J.Âs]
removalÂ by liquidating unspecified assets. Â See Tex. Fam. Code Ann. Â§ 153.502(a)(4)(E).Â  In this regard, the
evidence reflects that Axel sold an office building in Austin for $453,000 in
April 2008.Â  He testified that he had to sell the building to pay a $150,000
retainer to a Washington D.C. law firm, but he offered no documentary evidence
to support this testimony, and he did not account for the remaining $283,000 in
proceeds other than to say it would be applied to attorneyÂs fees (again,
without supporting documentation).[11]

Â Â Â Â Â Â Â Â Â Â Â  Lucia suggests that Respondent may
have also found that there was a risk of abduction under subsection (a) because
the evidence supports a finding that Axel is unemployed and that he insisted on
the renewal of A.J.Âs passport.Â  See Tex.
Fam. Code Ann. Â§ 153.502(a)(3), (4)(G).Â  However, Respondent did not
include either of these risk factors within her findings of fact, and we will
not deem findings on either factor.Â  See Vickery v. CommÂn for Lawyer
Discipline, 5 S.W.3d 241, 252 (Tex. App.ÂHouston [14th Dist.] 1999, pet.
denied) (if ground of recovery is entirely omitted from findings, Âthe omission
is deemed to be deliberateÂ).

Â Â Â Â Â Â Â Â Â Â Â  Viewed in the light most favorable to
the decision, the evidence that Axel had Ârecently engaged in planning
activities that could facilitate [A.J.Âs] removalÂ by liquidating the office
building could be considered Âcredible evidence of a risk of abduction.ÂÂ  See
Tex. Fam. Code Ann. Â§ 153.502(a)(4)(E),
(b).Â  Therefore, Respondent was then required[12] to
consider whether Axel Âhas strong familial, emotional, or cultural ties to
another countryÂ or lacked strong ties to the United States.Â  Id. Â§ 153.502(b);
see Karenev, 2008 WL 755285, at *2; Boyo, 196 S.W.3d at 423.

Â Â Â Â Â Â Â Â Â Â Â  In connection with the factors listed
in subsection (b), the comment to section 7 of the UCAPA states, ÂCourts should
consider evidence that the respondent was raised in another country and has
family support there, has a legal right to work in a foreign country, and has
the ability to speak that foreign language.ÂÂ  Unif.
Child Abuse Prevention Act Â§ 7 cmt., 9 Part IA U.L.A. at 42.Â  The UCAPA
does vary from the Texas statute by referring to Âstrong familial, financial,
emotional, or cultural ties,Â while subsection (b) of the Texas statute likewise
refers to Âstrong familial, emotional, or cultural tiesÂ but omits any reference
to Âfinancial ties.ÂÂ  Compare Unif.
Child Abuse Prevention Act Â§ 7(a)(6), (7), 9 Part IA U.L.A. at 41 with
Tex. Fam. Code Ann. Â§ 153.502(b).Â 
Instead, it appears that the Texas statute includes such financial considerations
as one of the initial factors under subsection (a).Â  See Tex. Fam. Code Ann. Â§ 153.502(a)(3).[13]Â 
Thus, we modify the approach set out in the UCAPA comment by focusing on
Âevidence that the respondent was raised in another country and has family
support there,Â  .Â  .Â  .Â  and has the ability to speak that foreign language.ÂÂ  See
Unif. Child Abuse Prevention Act
Â§ 7 cmt., 9 Part IA U.L.A. at 42.

Â Â Â Â Â Â Â Â Â Â Â  In this regard, Lucia testified Axel
has cousins in Austria.[14]Â 
The record is replete with references to AxelÂs frequent trips to Mexico.Â  He speaks several foreign languages including Spanish and German.Â  Viewed in the
light most favorable to the decision, this evidence supports RespondentÂs
finding that Axel Âhas strong familial, emotional, or cultural ties to another
country.ÂÂ  See Tex. Fam. Code
Ann. Â§ 153.502(b)(1).

Â Â Â Â Â Â Â Â Â Â Â  And because Respondent found Âcredible
evidence of a risk of abductionÂ under the subsection (a) factors, she could
also consider evidence relevant to the factors listed under subsection (c).Â  Id. Â§ 153.502(c); see Boyo, 196 S.W.3d at 424.

Â Â Â Â Â Â Â Â Â Â Â  RespondentÂs order includes
affirmative findings under subdivisions (4)(A), (B), (C), (E), and (J) of
subsection (c).Â  The only evidence offered to support these findings is LuciaÂs
generalized testimony that she would be Âjust out of luckÂ if Axel took A.J. to
a foreign country and, if she liquidated her assets, she Âmay or may not be
able to recover [her] child.Â

Â Â Â Â Â Â Â Â Â Â Â  Nonetheless, the majority of the
affirmative findings under subsection (c) appear to be matters of legislative
fact of which Respondent could take judicial notice sua sponte.[15]Â 
Rule of Evidence 201 Âgoverns only judicial notice of adjudicative facts.ÂÂ  Tex. R. Evid. 201(a).Â  As Professor
Wellborn has explained, matters of legislative fact or of other
non-adjudicative fact are subject to judicial notice but are not governed by
Rule 201. Â See 1 Steven Goode et
al., Guide to the Texas Rules of Evidence Â§ 201.1 (3d ed. 2002); see
also In re Graves, 217 S.W.3d 744, 750 (Tex. App.ÂWaco 2007, orig. proceeding).Â 
ÂLegislative factsÂ  .Â  .Â  . Â are not normally the objects of evidentiary
proof.Â  As to them, judicial notice instead of record evidence is the rule
rather than the exception, and indisputability is not required to justify
judicial notice.ÂÂ  Graves, 217 S.W.3d at 750 (quoting Goode Â§ 201.2).

Â Â Â Â Â Â Â Â Â Â Â  Evidence regarding the legal practices
and procedures of a foreign country are legislative facts.Â  See Rodriguez v.
State, 90 S.W.3d 340, 360 (Tex. App.ÂEl Paso 2001, pet. refÂd) (ÂThe
ability or inability to subpoena witnesses or documents from Mexico is a legislative fact regarding the content of law and policy.Â); see also Goode Â§ 203.1 (Âinternational law is
subject to judicial notice as a matter of common lawÂ) (citing Skiriotes v.
Florida, 313 U.S. 69, 73, 61 S. Ct. 924, 927, 85 L. Ed. 1193 (1941)).Â  But
cf. Tex. R. Evid. 203
(providing method for party to have court take judicial notice of laws of
foreign nation).Â  Accordingly, we hold that facts regarding another countryÂs
compliance with the Hague Convention on the Civil Aspects of International
Child Abduction, or whether that country poses obstacles to the prompt return
of a child taken there or poses risks to the childÂs safety are legislative
facts about which a trial or appellate court may take judicial notice without
prompting by the parties.[16]Â  See
Goode Â§ 201.2 (with regard to
judicial notice of legislative facts, a court Âmay employ whatever facts [it]
reasonably believe[s], without any requirements of indisputability or of
opportunity of parties to be heard concerning such beliefsÂ); see also
Dutton v. Dutton, 18 S.W.3d 849, 856 (Tex. App.ÂEastland 2000, pet. denied)
(ÂThis court may take judicial notice, even if no one requested the trial court
to do so and even if the trial court did not announce that it would do so.Â); cf.
Trujillo v. State, 809 S.W.2d 593, 595-96 (Tex. App.ÂSan Antonio 1991, no pet.)
(trial court Âcould have easily rejected any inadmissible testimony by the
school teacher and taken judicial notice that Edgewood High School is an
accredited school by the state education agencyÂ).

Â Â Â Â Â Â Â Â Â Â Â  Respondent found that ÂAustria and/or
MexicoÂ:

(1)Â Â 
Â Â Â Â Â  have no legal mechanisms
for the immediate and effective Â Â Â  enforcement of a child custody order;

Â 

(2)Â Â 
Â Â Â Â Â  have local laws or
practices that would:

Â 

(a) enable Axel to prevent Lucia from contacting
A.J. without due cause;

Â 

(b) restrict Lucia from freely traveling to or
exiting from the country because of gender, nationality, or religion; and

Â 

(c) restrict A.J.Âs ability to legally leave the
country when she reaches the age of majority because of gender, nationality, or
religion;

Â 

Respondent further found that Mexico in
particular: (1) is a country for which the State Department has issued a travel
warning to U.S. citizens; and (2) poses a risk to A.J.Âs physical health and
safety because of her specific circumstances and because of Âhuman rights
violations committed against children, including child labor and lack of child
abuse laws.Â Â Although RespondentÂs initial findings in this regard focused on
ÂAustria and/or Mexico,Â we will limit our focus to Mexico in view of the more
specific findings she made.

Â Â Â Â Â Â Â Â Â Â Â  The website for the State Department
provides helpful resources regarding international travel and the pertinent practices
and procedures of other nations.[17]Â  See
Unif. Child Abuse Prevention Act
Â§ 7 cmt., 9 Part IA U.L.A. at 42.Â  According to information about Mexico in the International Parental Child Abduction section of the website, Mexico is a signatory to the Hague Convention but Â[t]ime delays can be a problem in Hague
Convention cases in Mexico.ÂÂ  U.S. DepÂt
of State, International Parental Child Abduction: Mexico, http://travel.state.gov/family/abduction/
country/country_508.html (last visited Oct. 30, 2008).Â  The State Department
also reports that Hague Convention decisions can be appealed by direct appeal or
by a separate proceeding called an amparo.Â  ÂSeveral cases have been delayed
for years while amparos and appeals of decisions have blocked the case.ÂÂ  Id.

Â Â Â Â Â Â Â Â Â Â Â  Under the international travel
information section of the State DepartmentÂs website, additional Âcountry
specific informationÂ is provided.Â  U.S.
DepÂt of State, Country Specific Information: Mexico, http://travel.state.gov/travel/cis_pa_tw/
cis/cis_970.html (2008).Â  This internet document provides the following
information relevant to the issues in this case:

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
ÂSporadic outbursts of
politically motivated violence occur from time to time in certain areas of the
country, particularly in the southern states of Chiapas, Guerrero and Oaxaca.Â

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
In the State of Chiapas,[18]
ÂArmed rebels and armed civilian groups are present in some areas of the state,
and there is often no effective law enforcement or police protection.Â  Violent
criminal gang activity along the stateÂs southern borderÂmostly aimed at
illegal migrantsÂcontinues to be a concern.Â

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
ÂCrime in Mexico continues at high levels, and it is often violentÂ

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
ÂWomen traveling alone are
especially vulnerableÂ

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Kidnapping Âcontinues at
alarming ratesÂ

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
ÂSome border cities have seen
an increase in violence over the past year, some of which has been directed
against U.S. citizens.Â

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
ÂMexican authorities have
failed to prosecute numerous crimes committed against U.S. citizensÂ

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
ÂMexico is not in full
compliance with the [Hague] Convention.Â

Â 

Id.

Â Â Â Â Â Â Â Â Â Â Â  The State Department has also issued a
travel alert regarding Mexico which contains similar information about violent
crime and kidnappings in Mexico and warning of particular dangers to U.S. citizens.Â  See U.S. DepÂt of State, Travel Alert: Mexico, http://travel.state.gov/travel/cis_pa_tw/pa/pa_3028.html (2008).

Â Â Â Â Â Â Â Â Â Â Â  Finally, the State Department has
reported that ÂMexico is a source, transit and destination country of women and
children trafficked for the purpose of sexual exploitation.ÂÂ  U.S. DepÂt of State, Victims of Trafficking
and Violence Protection Act 2000: Trafficking in Persons Report 75 (2002), http://www.state.gov/documents
/organization/10815.pdf.

Â Â Â Â Â Â Â Â Â Â Â  Viewing this information in the light
most favorable to the decision, this information supports RespondentÂs findings
under subsection (c) concerning the obstacles and risks which may be posed if
Axel were to abduct A.J. to Mexico.Â  See Tex. Fam. Code Ann. Â§ 153.502(c)(4)(A), (B), (C), (E), (J).

Summary

Â Â Â Â Â Â Â Â Â Â Â  Viewed in the light most favorable to
RespondentÂs decision, the evidence and the information of which we have taken
judicial notice supports RespondentÂs finding of a potential risk of
international abduction.Â  See Karenev, 2008 WL 755285, at *2-3; Boyo,
196 S.W.3d at 423-24.

Best Interest of the Child

Â Â Â Â Â Â Â Â Â Â Â  When deciding whether to impose
abduction prevention measures, a court is also required to consider the best
interest of the child.Â  Tex. Fam. Code
Ann. Â§ 153.501(b)(1); see also id. Â§ 153.002 (Vernon 2002).Â 
Here, Respondent found that Âit is not in the childÂs best interest [for Axel]
to have unsupervised possession and access to the child.Â

Â Â Â Â Â Â Â Â Â Â Â  The primary factors to consider when
evaluating whether abduction prevention measures are in the best interest of
the child are the familiar Holley factors, which include:

(1) the desires of the child; (2) the emotional
and physical needs of the child now and in the future; (3) the emotional and
physical danger to the child now and in the future; (4) the parental abilities
of the individuals seeking custody; (5) the programs available to assist these
individuals to promote the best interest of the child; (6) the plans for the
child by these individuals or by the agency seeking custody; (7) the stability
of the home or proposed placement; (8) the acts or omissions of the parent
which may indicate that the existing parent-child relationship is not a proper
one; and (9) any excuse for the acts or omissions of the parent.

Â 

Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976); In re T.N.F., 205 S.W.3d 625,
632 (Tex. App.ÂWaco 2006, pet. denied).Â  These factors are not exhaustive and
need not all be proved as a condition precedent to imposition of such
measures.Â  See In re C.H., 89 S.W.3d 17, 27 (Tex. 2002); T.N.F.,
205 S.W.3d at 632.

Emotional and Physical Danger to Child

Â Â Â Â Â Â Â Â Â Â Â  We have already discussed the evidence
regarding the potential danger posed if A.J. were abducted to Mexico.Â  In addition, Lucia testified that Axel told her on several occasions that he was
concerned about threats to the safety of Lucia and A.J.Â  This concern was
expressly referenced in their divorce petition.Â  Only a few months before the
hearing, he showed Lucia the additional collection of weapons he had added to
his arsenal for protection.Â  Lucia testified that threats to the three of them
were Âa constant topic of conversation.ÂÂ  Axel conceded that there were some
threats to his own safety but opined that LuciaÂs view of the threats to
herself or A.J. were exaggerated.Â  Because Respondent could (and did) assess
the credibility of the witnesses, it was within her discretion to conclude that
the threat of danger to A.J. justified the imposition of abduction prevention
measures.

Stability of Home

Â Â Â Â Â Â Â Â Â Â Â  Lucia testified and Axel did not
dispute that he rarely spends any extended time with A.J.Â  His business
requires him to travel frequently.Â  Lucia on the other hand has borne primary
responsibility for A.J.Âs nurture and care.Â  Thus, the evidence relating to
this factor supports the imposition of abduction prevention measures.

Acts and Omissions

Â Â Â Â Â Â Â Â Â Â Â  The evidence concerning the partiesÂ
acts and omissions relative to A.J. is similar to the evidence concerning the
stability of their respective homes.Â  In addition, Lucia presented evidence to
suggest that Axel has acted with deception in seeking a divorce.Â  Finally, she
presented evidence that he recently urged the renewal of A.J.Âs passport and
pressed for the inclusion in the divorce decree of a provision granting him the
Â[r]ight to accompany all of [A.J.Âs] domestic and world-wide travel.Â[19]Â 
Therefore, the evidence relating to this factor supports the imposition of
abduction prevention measures.

Excuses for Acts and Omissions

Â Â Â Â Â Â Â Â Â Â Â  Axel presented evidence (which Lucia
does not dispute) that the demands of his business interests are the primary
reason he is unable to spend more time with A.J.Â  However, it was within
RespondentÂs discretion to determine whether this is a reasonable excuse,
particularly in light of the emphasis on what is in A.J.Âs best interest.Â 
Thus, the evidence relating to this factor neither supports nor contradicts the
imposition of abduction prevention measures.

Â 

Â 

Â 

Summary

Â Â Â Â Â Â Â Â Â Â Â  The record contains no evidence
pertinent to the other factors.[20]Â 
But viewed in the light most favorable to the decision, the evidence concerning
the four factors we have addressed supports RespondentÂs decision to impose
abduction prevention measures.

Public Policy

Â Â Â Â Â Â Â Â Â Â Â  A court must also consider Âthe public
policies of this state described by Section 153.001(a).ÂÂ  Tex. Fam. Code Ann. Â§ 153.501(b)(1).Â  Section
153.001(a) provides:

Â Â Â Â Â Â Â Â Â Â Â  The
public policy of this state is to:

Â 

(1) assure that children will have frequent and
continuing contact with parents who have shown the ability to act in the best
interest of the child;

Â 

(2) provide a safe, stable, and nonviolent
environment for the child; and

Â 

(3) encourage parents to share in the rights and
duties of raising their child after the parents have separated or dissolved
their marriage.

Â 

Id. Â§
153.001(a) (Vernon 2002).

Â Â Â Â Â Â Â Â Â Â Â  Although these policies must be considered,
they are only one of the factors enumerated for consideration in determining
whether to impose abduction prevention measures.Â  See id. Â§ 153.501(b).Â 
Therefore, Âslavish adherenceÂ to these policies may not be warranted when the
other factors dictate that abduction prevention measures are necessary.Â  See
Echols v. Olivarez, 85 S.W.3d 475, 480 (Tex. App.ÂAustin 2002, no pet.) (Âin
the context of relocation cases, slavish adherence to such policy [of frequent
and continuous contact] ignores the realities of a family that has been
dissolvedÂ).

Â Â Â Â Â Â Â Â Â Â Â  From the language of the statute
itself, this stateÂs public policy is to assure Âfrequent and continuing
contactÂ between children and Âparents who have shown the ability to act in the
best interest of the child.ÂÂ  Tex. Fam.
Code Ann. Â§ 153.001(a)(1); In re R.D.Y., 51 S.W.3d 314, 323 (Tex. App.ÂHouston [1st Dist.] 2001, pet. denied).

Â Â Â Â Â Â Â Â Â Â Â  Viewed in the light most favorable to
the decision, the evidence supports a conclusion that Axel has not shown
the ability to act in A.J.Âs best interest.Â  Cf. In re M.J., 227 S.W.3d 786,
793 (Tex. App.ÂDallas 2006, no pet.) (fatherÂs relocation of children to Bangladesh in violation of divorce decree and fact that remaining in Bangladesh may endanger
children supported finding that appointment of mother as sole managing
conservator was in the childrenÂs best interest and did not violate public
policy).

Â Â Â Â Â Â Â Â Â Â Â  Nonetheless, Axel cites Thompson v.
Thompson, 827 S.W.2d 563, 569 (Tex. App.ÂCorpus Christi 1992, writ denied),
for the proposition that his right to periodic visitation should not be denied
Âexcept in an extreme case of parental unfitness.ÂÂ  We agree that any unusual
restrictions on parental access to a child must be justified by clear and
convincing evidence under the law, but the nature of the laws governing the
parent-child relationship has changed dramatically in the last fifteen years.Â  Cf.
Echols, 85 S.W.3d at 480.

Â Â Â Â Â Â Â Â Â Â Â  The requirement of Âparental
unfitnessÂ is still repeated in more recent cases involving termination of
parental rights or cases in which a nonparent is seeking appointment as conservator
of a child over a parent.Â  See, e.g., In re B.L.D., 113 S.W.3d 340, 353
(Tex. 2003); In re S.W.H., 72 S.W.3d 772, 778 (Tex. App.ÂFort Worth 2002,
no pet.).Â  Here, however, Lucia is not seeking to eliminate AxelÂs access to
A.J..Â  Instead, she is seeking restrictions consonant with A.J.Âs best
interest.

Â Â Â Â Â Â Â Â Â Â Â  The statutes governing international
parental abduction specify the showing which must be made to obtain abduction
prevention measures in a suit affecting the parent-child relationship.Â  And
public policy considerations are a part of that analysis.Â  See Tex. Fam. Code Ann. Â§ 153.501(b)(1).Â 
However, even the constitutional rights of a parent must sometimes bow to the
best interest of the child or other statutory considerations.Â  See, e.g., In
re C.R.O., 96 S.W.3d 442, 452 (Tex. App.ÂAmarillo 2002, pet. denied)
(domicile restriction was consistent with public policy because it encouraged
fatherÂs continuing contact with children and did not infringe on motherÂs
constitutional right to travel).

Â Â Â Â Â Â Â Â Â Â Â  Regarding the other two public policy
considerations, the evidence shows that Lucia is presently better able to
provide A.J. with Âa safe, stable, and nonviolent environment.ÂÂ  See Tex. Fam. Code Ann. Â§ 153.001(a)(2).Â 
And Respondent appears to be encouraging Axel and Lucia to Âshare in the rights
and duties of raisingÂ A.J. by allowing Axel to have visitation rights, albeit
with restrictions.Â  Id. Â§ 153.001(a)(3); see Lenz v. Lenz, 79
S.W.3d 10, 18 (Tex. 2002) (because father had ability to visit children in
Germany, custody order allowing mother to relocate to Germany would allow
father and mother Âto continue sharing the rights and duties of raising their
two childrenÂ).

Â Â Â Â Â Â Â Â Â Â Â  Accordingly, we find that RespondentÂs
order is consistent with the public policy of this state as expressed in
section 153.001.

Other Considerations

Â Â Â Â Â Â Â Â Â Â Â  In addition, section 153.501(b)
requires a court to consider: (1) obstacles to the return of the child if
abducted and (2) potential harm to the child if abducted.Â  Tex. Fam. Code Ann. Â§ 153.501(b)(3),
(4).Â  We have already addressed the evidence relevant to these issues and have
concluded that such evidence supports the imposition of abduction prevention
measures.

Least Restrictive Means

Â Â Â Â Â Â Â Â Â Â Â  Axel also argues that, even assuming
some abduction prevention measure is warranted, Respondent abused her
discretion by failing to consider the least restrictive means available.Â  The
comment to section 8 of the UCAPA encourages courts to employ the least
restrictive means.

Â Â Â Â Â Â Â Â Â Â Â  ÂIdeally the court will choose the
least restrictive measures and conditions to maximize opportunities for
continued parental contact while minimizing the opportunities for abduction.ÂÂ  Unif. Child Abuse Prevention Act Â§ 8
cmt., 9 Part IA U.L.A. at 44.

Â Â Â Â Â Â Â Â Â Â Â  We agree in principle that a court
should employ the least restrictive means available to prevent abduction so
that parental rights are not unreasonably restricted.Â  However, section 153.503
is written more broadly than section 8 of the UCAPA and thus vests a trial
court with broad discretion in determining which preventive measures to
impose.Â  Compare Tex. Fam. Code
Ann. Â§ 153.503 (Âthe court may take any of the following
actionsÂ) (emphasis added) with Unif.
Child Abuse Prevention Act Â§ 8(c), 9 Part IA U.L.A. at 43 (Â[a]n
abduction prevention order may include one or more of the followingÂ).

Â Â Â Â Â Â Â Â Â Â Â  As the comment to section 8 of the
UCAPA notes, ÂThe most common, and one of the most effective, restrictions is
supervised visitation.Â  Visitation should remain supervised until the court
decides the threat of abduction has passed.ÂÂ  Unif.
Child Abuse Prevention Act Â§ 8 cmt., 9 Part IA U.L.A. at 45.

Â Â Â Â Â Â Â Â Â Â Â  Accordingly, we cannot say that
Respondent abused her discretion by ordering supervised visitation as an
abduction prevention measure under section 153.503.

Summary

Â Â Â Â Â Â Â Â Â Â Â  Viewed in the light most favorable to
RespondentÂs findings, the evidence and information before us support findings
that: (1) Axel poses a potential risk of international abduction; (2) there are
obstacles to locating, recovering and returning A.J. to the United States were
she abducted to Mexico; (3) there is a potential for harm to A.J. were she
abducted to Mexico; and (4) it is in A.J.Âs best interest to impose an
abduction prevention measure.Â  In addition, we hold that RespondentÂs order is
consistent with Âthe public policies of this state described by Section
153.001(a).ÂÂ  Accordingly, Respondent did not abuse her discretion by requiring
supervised visitation.

REMOVAL OF RESPONDENT

Â Â Â Â Â Â Â Â Â Â Â  Axel asks this Court to replace
Respondent with another judge because she stated in her findings that she found
him Âto be Ânot credibleÂ and ÂevasiveÂÂ and she Âcannot rely on [him] to tell
the truth.Â

Â Â Â Â Â Â Â Â Â Â Â  A trial judge may be removed from
presiding over a particular case for one of three reasons: (1) disqualification
under article V, section 11 of the Texas Constitution; (2) disqualification
under section 74.053 of the Government Code (applicable to assigned judges); or
(3) recusal under the procedural rules for civil trials and appeals.Â Â  Â Â See
In re Union Pac. Res. Co., 969 S.W.2d 427, 428 (Tex. 1998) (orig.
proceeding); Spigener v. Wallis, 80 S.W.3d 174, 179 (Tex. App.ÂWaco 2002,
no pet.).Â  Here, AxelÂs complaint presents a potential ground for recusal under
Rule of Civil Procedure 18b.Â  See Tex.
R. Civ. P. 18b(2)(b).

Â Â Â Â Â Â Â Â Â Â Â  Rule 18a provides the procedures for
pursuing recusal of a trial judge.Â  Id. 18a.Â  Insofar as we are aware,
Axel has not filed a motion to recuse Respondent.Â  If he has, Rule 18a(f)
prescribes the appellate remedy.Â  ÂIf the motion is denied, it may be reviewed
for abuse of discretion on appeal from the final judgment.Â  If the motion is
granted, the order shall not be reviewable, and the presiding judge shall
assign another judge to sit in the case.ÂÂ  Id. 18a(f).

Â Â Â Â Â Â Â Â Â Â Â  Because Axel has an adequate legal remedy,
he is not entitled to mandamus relief in connection with his efforts to have
Respondent removed from the case. Â See Union Pac. Res. Co., 969
S.W.2d at 428-29.

CONCLUSION

Â Â Â Â Â Â Â Â Â Â Â  Respondent did not abuse her
discretion by requiring supervised visitation.Â  Because Axel could pursue an
interlocutory appeal from RespondentÂs temporary injunction prohibiting him
from disposing of any assets until a hearing on the bill of review, the
injunction may not be challenged by mandamus.Â  Nor is mandamus review available
in connection with AxelÂs efforts to have Respondent removed from the case.

Accordingly, we deny AxelÂs petition for writ of
mandamus.

Â 

FELIPE REYNA

Justice

Â 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring with note)*

Petition denied

Opinion delivered and
filed November 5, 2008

[OT06]

Â 

*Â Â Â Â Â Â Â Â Â Â  (Chief
Justice Gray would deny the petition without an opinion.Â  When reviewing an
interim action by a trial court, it is not a particularly good time to explore
and discuss a relatively new area of the law.Â  This is true primarily because
the nature of the proceeding leaves the record less than fully developed.Â 
Further, he joins no part of the opinion and expressly disagrees with the
discussions of the standard of review and taking judicial notice of the laws of
another country and a tour of the State DepartmentÂs web page on Mexico.Â  A separate opinion will not issue.)









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Lucia also filed a separate
application for a temporary restraining order, temporary injunction, and
temporary orders contemporaneously with the motion to modify.

Â 





[2]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The parties treat this
document as RespondentÂs order, and we do likewise.Â  Rule of Civil Procedure
299a provides that a courtÂs findings Âshall not be recitedÂ in the courtÂs
order or judgment.Â  Tex. R. Civ. P. 299a.Â 
Nevertheless, findings of fact recited in an order or judgment will be accorded
probative value so long as they are not in conflict with findings recited in a
separate document.Â  In re U.P., 105 S.W.3d 222, 229 n.3 (Tex. App.ÂHouston [14th Dist.] 2003, pet. denied); Hill v. Hill, 971 S.W.2d 153, 157 (Tex.
App.ÂAmarillo 1998, no pet.).





[3]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Colorado, Kansas, Louisiana, Nebraska, Nevada, South Dakota and Utah.Â  NatÂl
Conference of CommÂrs on Unif. State Laws, A Few Facts About the Uniform Child
Abduction Prevention Act, http://www.nccusl.org/Update/uniformact_factsheets/uniformacts-fs-ucapa.asp
(last visited Oct. 30, 2008).

Â 





[4]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Idaho, Michigan, New Hampshire, New Mexico, Pennsylvania and South Carolina.Â  Id.

Â 





[5]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The final report from that
study was published by the OJJDP in 1998.Â  Janet
R. Johnston et al., Prevention of Family Abduction Through Early Identification
of Risk Factors (Office of Juvenile Justice & Delinquency
Prevention, U.S. DepÂt of Justice 1998); see also Janet R. Johnston et
al., Early Identification of Risk Factors for Parental Abduction, Juvenile Justice Bulletin (Office of
Juvenile Justice & Delinquency Prevention, U.S. DepÂt of Justice), Mar.
2001, at 1 n.2.Â  A copy of this report (NCJ 182791) can be obtained from the
National Criminal Justice Reference Service.Â  See NatÂl Criminal Justice Reference Serv., NCJRS
Abstract: NCJ 182791, http://www.ncjrs.gov/App/Publications/abstract.aspx?ID=182791
(last visited Oct. 30, 2008).

Â 





[6]
Â Â Â Â Â Â Â Â Â Â Â Â Â  While these statutes are
similar in many ways, we note that the UCAPA differs from the Texas statutes
insofar as the UCAPA seeks to deter both Âdomestic and international child
abductions.ÂÂ  Unif. Child Abuse
Prevention Act prefatory note, 9 Part IA U.L.A. 33 (Supp. 2008).

Â 





[7]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Supervised visitation is one
of eight specific Âabduction prevention measuresÂ provided by section 153.503.Â 
See Tex. Fam. Code Ann. Â§ 153.503(2)
(Vernon Supp. 2008).

Â 





[8]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The statute provides a list of
ten factors to consider in deciding whether the foreign country presents
obstacles to the recovery and return of a child who is abducted or poses a risk
of harm to that child.Â  Id. Â§ 153.502(c)(4) (Vernon Supp. 2008).

Â 





[9]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Actually, Respondent found
that Axel has Âstrong tiesÂ to Âanother countryÂ and then made a separate
finding immediately thereafter that he Âhas ties to Austria and Mexico.ÂÂ  We construe these findings together as a finding that he has Âstrong tiesÂ to Austria and Mexico.

Â 





[10]
Â Â Â Â Â Â Â Â Â Â Â  Although subsection (b)(1)
requires a court to consider whether the parent has strong ties to any foreign
country, the subsection draws particular attention to countries which are not
signatories to the Hague Convention on the Civil Aspects of International Child
Abduction.Â  Id. Â§ 153.502(b)(1) (Vernon Supp. 2008).Â  Both Austria and Mexico are signatories to the Hague Convention.





[11]
Â Â Â Â Â Â Â Â Â Â Â  Axel references some of
RespondentÂs findings which he contends are indicative of Respondent shifting
the burden of proof to him even though Lucia as movant had the burden of proof
in the hearing.Â  Here, where we note AxelÂs failure to offer evidence, we
observe that Lucia made a prima facie showing in this regard by showing that he
had liquidated a substantial asset.Â  See Tex. Fam. Code Ann. Â§ 153.502(a)(4)(E) (Vernon Supp. 2008).Â 
When she made this showing, it then became incumbent upon Axel to produce
evidence that the proceeds Âcould [not] facilitate the removal of the child
from the United States.ÂÂ  Id.; see Griffin Indus., Inc. v. Thirteenth
Court of Appeals, 934 S.W.2d 349, 352 (Tex. 1996) (orig. proceeding) (ÂTo
overcome a prima facie showing, an opposing party must offer evidence to rebut
what has been established.Â); see also BlackÂs
Law Dictionary 1228 (8th ed. 2004) (defining Âprima facieÂ as
Â[s]ufficient to establish a fact or raise a presumption unless disproved or
rebuttedÂ).

Â 





[12]
Â Â Â Â Â Â Â Â Â Â Â  According to subsection (b), if
the court finds Âcredible evidence of a risk of abductionÂ under subsection
(a), then Âthe court shall also consider evidenceÂ regarding the two
factors listed in subsection (b).Â  Tex.
Fam. Code Ann. Â§ 153.502(b) (emphasis added).Â  Use of the term ÂshallÂ
Âimposes a dutyÂ on the court to consider such evidence.Â  See Tex. GovÂt Code Ann. Â§ 311.016(2)
(Vernon 2005).

Â 





[13]
Â Â Â Â Â Â Â Â Â Â Â  Subsection (a)(3) directs the
court to consider evidence that the parent Âlacks financial reason to stay in
the United States, including evidence that the parent is financially
independent, is able to work outside of the United States, or is unemployed.ÂÂ  Tex. Fam. Code Ann. Â§ 153.502(a)(3) (Vernon Supp. 2008).

Â 





[14]
Â Â Â Â Â Â Â Â Â Â Â  Lucia contends in her mandamus response
that Axel Âis a naturalized citizenÂ and by inference was born in Austria, but there is no evidence in the record to support this assertion.

Â 





[15]
Â Â Â Â Â Â Â Â Â Â Â  There is a twenty-three day gap
between the date of the hearing and the date Respondent signed the order.Â  It
is entirely plausible that Respondent conducted additional research sua
sponte to find relevant information regarding Austria and Mexico.Â  Assuming she did, it would have been helpful to the parties for her to advise them
of the sources she relied on to make her findings.





[16]
Â Â Â Â Â Â Â Â Â Â Â  Nevertheless, the parties in
such proceedings should be encouraged to offer evidence relevant to the
practices and procedures of other nations.Â  Cf. Tex. R. Evid. 203
(procedure for requesting court to take judicial notice of laws of a foreign
nation).





[17]
Â Â Â Â Â Â Â Â Â Â Â  See U.S. DepÂt of
State, Welcome to Travel.State.Gov, http://travel.state.gov/ (last
visited Oct. 30, 2008).

Â 





[18]
Â Â Â Â Â Â Â Â Â Â Â  The record contains no evidence
of the particular areas in Mexico where Axel travels when there.





[19]
Â Â Â Â Â Â Â Â Â Â Â  This is not among the rights
enumerated in the Family Code for parents, managing conservators, or possessory
conservators.Â  See Tex. Fam. Code
Ann. Â§Â§ 153.073, 153.074, 153.132 (Vernon Supp. 2008), Â§ 153.192 (Vernon
2002).

Â 





[20]
Â Â Â Â Â Â Â Â Â Â Â  These other factors are: (1) the
desires of the child; (2) the emotional and physical needs of the child now and
in the future; (3) the parental abilities of the individuals seeking custody; (4)
the programs available to assist these individuals to promote the best interest
of the child; and (5) the plans for the child by these individuals or by the
agency seeking custody.Â  See Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976); In re T.N.F., 205 S.W.3d 625, 632 (Tex. App.ÂWaco 2006, pet. denied).